**FILED**

**DECEMBER 26, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**07 C 7218**

|  |  |
|---|---|
| PETROF, SPOL. S R.O., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| GENEVA INTERNATIONAL | ) |
| CORPORATION | ) |
|  | ) |
| Defendant. | ) |

**JUDGE BUCKLO
MAGISTRATE JUDGE KEYS**

### PLAINTIFF'S APPLICATION TO CONFIRM FOREIGN ARBITRATION AWARD

Plaintiff, Petrof, spol. s r.o. ("Petrof"), by and through its attorneys, hereby applies to this Court for the entry of an order confirming the October 12, 2007 Arbitration Award of the Arbitration Court at the Chamber of Commerce of the Czech Republic and Agrarian Chamber of the Czech Republic against Defendant, Geneva International Corporation ("GIC"). In support of its application, Petrof states as follows:

#### Parties

1.      Plaintiff, Petrof, spol. s.r.o. ("Petrof"), is a manufacturer of pianos with its principal place of business at Hradec Kralové, Brněnská 207, Postal Code 50006, in the Czech Republic.

2.      Defendant, Geneva International Corporation ("Geneva"), is an Illinois corporation with its principal place of business in Wheeling, Cook County, Illinois. Geneva previously imported, among other things, pianos made in the Czech Republic and elsewhere which it sold in the United States.

**Jurisdiction and Venue**

3.    The Court has original subject matter jurisdiction over this matter pursuant to 9 U.S.C. § 203 and 28 U.S.C. § 1331.

4.    Venue is proper in this District pursuant to 9 U.S.C. § 204 since, save for the arbitration agreement between the parties, an action or proceeding with respect to the controversy between the parties could have been brought in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) in that the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

**The Parties' Arbitration Agreement and the Award**

5.    On May 24, 2001, the parties entered into a contract of exclusive sale ("Contract"), which was subsequently extended on June 10, 2003, and April 27, 2004.  Pursuant to the terms of the Contract, the parties agreed in relevant part:

> Any dispute arising our of or related to this Contract ... shall be settled through the arbitration procedure in accordance with Rules of that Arbitration Court of Chamber of Commerce and Agrarian Chamber of Czech Republic.  Each Party undertakes to accept the ... arbitration [finding] and shall abide by it.

Contract at Section XVI, a certified copy of which is attached hereto as Exhibit 1.

6.    On May 29, 2007, Plaintiff commenced an arbitration proceeding pursuant to the Contract, and, on October 12, 2007, the  Arbitration Court of Chamber of Commerce and Agrarian Chamber of Czech Republic entered an Award in favor of the Plaintiff and against the Defendant in the principal amount of one hundred and thirty-four thousand, one hundred and eighty-two United States dollars ($134,182.00), together with interest at a rate of 9.25% commencing on March 2, 2007, and Plaintiff's attorneys' fees and certain other costs to be paid

within fifteen days of the Award as detailed at pages 1 and 2 of the Arbitration Award. A true and accurate certified copy of the Arbitration Court of Chamber of Commerce and Agrarian Chamber of Czech Republic's October 12, 2007 Award in English and Czech is attached hereto as Exhibit 2. As set forth in the Award, Defendant was also required to pay Plaintiff's attorneys' fees and travel expenses totaling CZK 124,272.90 ($6,790.50 U.S. dollars) within fifteen days of the Award. (*Id.* at p. 2, No. 3).

7.      To date, Defendant has only paid the costs outlined in Paragraph 2 of the Award (*Id.* at p. 2, No. 3), but has failed to pay the principal amount of the Award or Plaintiff's attorneys' fees. *See* Declaration of Attorney Pavel Vidura, attached hereto as Exhibit 3.

8.      Pursuant to 9 U.S.C. § 207, Plaintiff is permitted to apply to this Court for an Order confirming the Award and entering judgment against the Defendant.

9.      As of December 26, 2007, Plaintiff is entitled to recover prejudgment interest on the principal amount of the Award in the amount of $2,516.37 [$134,182.00 x .0925 x 74/365], and prejudgment interest on the awarded attorneys' fees of $54.88 [$6,790.50 x .05 x 59/365].

WHEREFORE, Plaintiff respectfully requests this Court to confirm the October 11, 2007 Arbitration Award and to enter judgment in favor of the Plaintiff in the amount of one hundred and forty-three thousand, five hundred and forty-three dollars and twenty-five cents ($143,543.25), plus the additional interest accrued through the judgment date, together with the additional attorneys' fees and costs incurred confirming and enforcing the Award and judgment in this action.

Dated this 26th day of December 2007

<div align="center">

Respectfully submitted,


/s Daniel P. Hogan
One of the Attorneys for Petrof

</div>

Daniel P. Hogan
Attorney No. 6182808
McCabe & Hogan, P.C.
19 South Bothwell Street, Suite 200
Palatine, Illinois 60067
Telephone:  (847) 359-6100
Facsimile: (847) 359-6105
E-Mail: dhogan@mccabehogan.com

# EXHIBIT 1

# OPIS

LRR 5/21/01

## Contract of Exclusive Sale

Továrná na piana, a.s., and Petrof, Ltd., their respective affiliates and successors,

represented by chairman of the board of directors and commercial director of each Ing. Jan Petrof (hereinafter referred to collectively as "Supplier"), and

Geneva International Corporation, its affiliates and successors,

represented by Mr. Earl Matzkin, president (hereinafter referred to as "Buyer;" with Supplier and Buyer being referred to in this contract of exclusive sale (the "Contract") individually as a "Party" and collectively as the "Parties")

hereby agree as follows:

### Fundamental characteristics of Buyer's activity:

1.  Buyer purchases and sells contractual products in its own name and on its own account.

2.  Buyer supports and promotes sales of contractual products within the contractual territory.

3.  Trading under this Contract will take effect in accordance with Supplier's general sales and delivery conditions that are always attached to particular confirmations as their inseparable part.  Only those sales and delivery conditions are valid if endorsed by Buyer together with contract of sale (confirmation) or signed on the back of contract of sale (confirmation), and also INCOTERMS 2000 conditions are to be applied along with such general sales and delivery conditions.

### Rights and obligations of both parties:

### Section I - Exclusivity and Contractual Territory

1.  The contractual territory specified by this Contract is the U.S.A.

2.  Wholesale distributor activity of Buyer is to cover the whole contractual territory.

## Section II - Contractual Products

The contractual products are upright pianos and grand pianos produced by Supplier under trademarks including, without limitation, "Petrof®, Weinbach®, Rosler®, Scholze®, and Fibich®" (and all other pianos produced by Supplier now or at any time during the Term [as hereinafter set forth in Section XIII below]).

## Section III - Establishment of Prices in Contractual Territory.

Buyer is entitled to establish his own selling prices for contractual products within the contractual territory to support reaching maximum sales volume.

## Section IV – Confidential Information

Each Party (the "Receiving Party") shall protect, both during the Term and thereafter, confidential information disclosed by the other Party (the "Disclosing Party") and shall not misuse it in any way whatsoever. The Receiving Party will exercise at least the same degree of care in preventing the disclosure of the Disclosing Party's confidential information as it does in protecting its own confidential information, but in any event no less than a reasonable degree of care. As a minimum protection, the Receiving Party will limit disclosure of the Disclosing Party's confidential information to its employees, agents or affiliates having a need to know such confidential information and will not disclose such confidential information to any other third party, individual, corporation or other entity without the prior written consent of the Disclosing Party unless legally required to make such disclosure, in which case the Receiving Party will provide the Disclosing Party with prompt prior written notice of such required disclosure, and furnish only that portion of the confidential information which the Receiving Party is advised by its legal counsel is legally required.

## Section V - Buyer's Obligations

Buyer undertakes to:

1.  Exert effort to support and promote sales of the contractual products in the contractual territory in the way most conducive to their optimization, as determined by Buyer.

2.  Organize a sales network to cover the contractual territory.

3.  Promote contractual products on his own account and in a suitable scope to stimulate growth of their sales in the contractual territory.

4.  Furnish quarterly sales reports from each 3/31, 6/30, 9/30 and 12/31, respectively, during the Term. Each such report shall include information related to quantities of sales of contractual products, timing of such sales, models sold and inventory on-hand, as well as new information, if any, pertaining to the current state of competition. This report shall be delivered to the Supplier together with new proposals, if any, to improve sales of contractual products in the contractual territory.

5.  Participate in those trade fairs and exhibitions of musical instruments as determined by Buyer as most important for the promotion of contractual products in the contractual territory.

6.    Supplier hereby grants to Buyer a non-exclusive, royalty-free license to use and have its dealers use the trademarks of Supplier for the promotion of the contractual products within the contractual territory; provided, that Buyer and its dealers shall not have license to use Supplier's trademarks in any derivative manner including, without limitation, utilization of Supplier's name or other marks in connection with items or goods other than the contractual products. During the effectiveness and after the termination of this Contract, the Buyer shall not apply for registration of either Supplier's trade name, or trademark registered for Supplier, or trademarks used with contractual products. Also, Buyer is not entitled to transfer any intellectual property right to third parties, in whole or in part, resulting from this Contract without the explicit and written approval of Supplier. Buyer shall notify Supplier without undue delay about any breach of trademark rights known to Buyer in the contractual territory.

7.    Buyer shall have his dealers carry out advance service of contractual products within the appropriate scope and with professional diligence.

8.    Buyer shall maintain a reasonable inventory of contractual products to satisfy requirements of its clients. Buyer shall sell contractual products exclusively in the contractual territory. Buyer cannot directly, or indirectly through third persons, sell or supply for resale the contractual products in any territory outside the contractual territory.

9.    Arrange for all the supplies of contractual products to be bought within the duration of contracted terms.

10.   Arrange for annual purchases of contractual products from the Supplier in the minimum contracted annual turnover amounts.

11.   At least 90 days before the end of each calendar year during the Term, and subject to the terms of Section VIII below, to agree with Supplier on a plan of detailed assortment to apply to the next succeeding calendar year occurring within the Term.


## Section VI - Supplier's obligations

Supplier undertakes to:

1.    Procure for Buyer necessary promotion material, catalogues etc., that shall be sent to Buyer from Supplier's factory.

2.    Honor Buyer's rights of exclusive sales of contractual products in the contractual territory. Without limiting the generality of the foregoing sentence, Supplier shall not directly, or indirectly through third parties, sell or supply contractual products for sale in the contractual territory to any person or entity other than Buyer.

3.    Take appropriate measures, consistently with Section VII below, within Supplier's possibilities against any entity or person that unjustifiably supplies contractual products or engages in Unauthorized Sales, as therein defined below, within the contractual territory.

4.    Supplier shall reimburse and indemnify Buyer for any fine, penalty, legal or other expense incurred by Buyer or its distribution or customer base in connection with any claim by a third party that Buyer's sale or use of a contractual product in the contractual territory (i) infringes a trademark, trade name, service mark, patent, copyright, or similar

proprietary or intellectual property right or (ii) constitutes misuse or misappropriation of a trade secret.

## Section VII – Unauthorized Sales of Contractual Products

1. Each Party upon becoming aware of any person or entity unjustifiably supplying contractual products either within (as to Supplier in violation of Section VI.2) or beyond (as to Buyer in violation of Section V.8) the contractual territory, as the case may be (in either case, "Unauthorized Sales"), shall notify the other Party in writing promptly of such Unauthorized Sales. The notice shall include such material facts relevant to the Unauthorized Sales as the Party providing the notice possesses. The Party which receives the notice (for these purposes, the "Defaulting Party") shall promptly, at its own expense, take all reasonable, necessary and appropriate steps to end such Unauthorized Sales including, without limitation: (i) notifying any party making such Unauthorized Sales that it must cease and desist from such activity; (ii) taking all reasonable measures with any party that makes or facilitates the Unauthorized Sales to ensure that no further Unauthorized Sales can continue, whether that be accomplished by ceasing to sell or supply, directly or indirectly, any contractual products to any such party, terminating any relationship with any such party, or otherwise; (iii) obtaining, if possible, the return of any inventory of contractual products maintained by any such party; and/or (iv) instituting legal proceedings against any such party. The Defaulting Party shall inform the other Party with reasonable promptness of the steps it takes to end the Unauthorized Sales.

2. If the Defaulting Party does not take all reasonable, necessary and appropriate steps to end the Unauthorized Sales, or upon request does not inform the other Party of the steps taken to end such Unauthorized Sales, then the other Party shall be entitled to institute an action in any court of competent jurisdiction, including without limitation any state or federal court sitting in the State of Illinois. The Parties agree solely for these purposes that any such court shall have personal jurisdiction over each of them in any such action, for the purpose of obtaining injunctive and/or monetary relief against the Defaulting Party and/or any other party involved in Unauthorized Sales. The prevailing Party in any such action shall, upon entry of a final order by the court having jurisdiction over such action, be entitled to payment by the other Party of its reasonable attorneys' fees and expenses incurred in connection with the prosecution or defense of such an action.

## Section VIII - Minimum Purchases

Minimum purchases of contractual products, which is essential to the validity of this Contract, shall be agreed with Supplier for purchases of grand pianos and upright pianos in a minimum relation and ratio constituting <u>one</u> grand piano to <u>one</u> upright piano (the "Minimum Ratio"), at least 90 days before the beginning of each calendar year during the Term to apply to the next succeeding calendar year occurring during the Term. The actual volume of purchases with respect to each calendar year during the Term, and the assortment thereof per Section V.11, shall be established annually; provided, however, that for each such calendar year during the Term, the minimum annual volume of sales hereunder (i) shall include no fewer than 1,090 units each of grand and upright pianos; (ii) shall accord Buyer the right hereunder to increase the volume of upright pianos it purchases from Supplier beyond the Minimum Ratio (viz., 1:>1) so long as

Buyer correlatively therewith is willing to commit to increase the volume of purchases of additional grand pianos up to the amount which Supplier is capable of timely manufacturing up to the point whereby the Minimum Ratio would be reestablished.

## Section IX - Prices to Supplier

Contracted selling prices of grand pianos and upright pianos are agreed in USD. Prices of contractual products for the future period shall be agreed at least 120 days before the end of each calendar year during the Term to apply to the next succeeding calendar year occurring within the Term, and be reflected in an established price list. In the event the Parties cannot agree, this Agreement shall remain in full force and effect based upon a percentage increase in such prices from one calendar year during the Term to the next equal to the lesser of (i) the percentage increase of any demonstrable and justified increase in the prices of the production inputs, in particular of the raw materials, energy, technologies and salaries, including increases resulting from changes in foreign exchange rate related to the production inputs, or (ii) the average percentage increase of the prices (based upon volume per customer) from such previous calendar year to the next at which Supplier sells the contractual products to its other major customers.

## Section X – Delivery Terms

Deliveries of contractual products during the Term shall be made generally on a timely basis, taking into account, however, considerations of seasonality in determining the timing and quantity of particular deliveries through the mutual cooperation of the Parties. Payment for each such delivery shall be due and payable no later than within 90 days after the date of invoice or shipment ex-factory, whichever is later.

## Section XI – Deleted

## Section XII - Amendments of Contract

Any change of Buyer's or Supplier's legal qualification of status shall not be a qualified as a reason for a change of the effectiveness of this Contract. In case of change of statutory form of Supplier or Buyer, the Party whose form is changed shall be obliged to inform accordingly the other Party, one month prior, and agree that this change of form shall take place in a manner that does not pose any detriment to the other Party.

## Section XIII - Contract Term

The Contract shall be in effect, unless terminated earlier per Section XIV below, from Jan 1, 2002 through Dec 31, 2004 (the "Term"). If one Party proposes before Sept 30, 2004 that this Contract be extended by a one-year period, and the other Party agrees to such proposal in writing, this Contract shall be so extended, with any extended period also referred to as the Term.

## Section XIV - Withdrawal from the Contract

1.  Each Party shall be entitled to withdraw from this Contract with six-month prior notice in case of substantial infringement of obligations by the other Party; provided, the other Party did not honor and otherwise cure after two previous notices of intention to withdraw, containing evidence of the alleged infringement of obligations, sent no later than 30 days prior to such withdrawal. The substantial infringement is understood to be mainly: (i) non-fulfillment of minimum annual purchases by Buyer per Section VIII; (ii) Supplier supplying contractual products directly, or indirectly through a third party, to another buyer in the contractual territory per Section VI.2 above; (iii) Buyer selling contractual products directly, or indirectly through a third party, beyond the contractual territory per Section V.8 above.

2.  The withdrawal from the Contract and all prior notices in regard thereto must be advised in accordance with the notice provisions set forth in Section XVII below.

3.  All detriment or damages incurred or suffered by any premature termination of the Term due to the default of a Party are expressly reserved by the innocent Party and are the responsibility of the defaulting Party.

4.  If either of the Parties terminates the Contract in accordance with this Section XIV, and it is determined pursuant to arbitration initiated under Section XVI that such Party was not entitled to the premature termination, such arbitration decision will be accepted, and the non-terminating Party shall be entitled to require compensation of demonstrated damages for the improper, premature termination of the Contract.

## Section XV - Claims procedure

Buyer is entitled during the period of five years from the delivery of instruments to assert claim of damages with Supplier. Any customer who purchases a contractual product from Buyer may assert claims only with Buyer and/or the relevant distributor of Buyer. Buyer shall repair small defects in the contractual products within the scope of Buyer's service and at Buyer's own cost. In case of more serious defects (especially broken frame, broken resonating plate, broken bridge, cracked soundboard, finish changing color, broken and peeling varnish on the surface of at least ten square centimeters), Buyer shall notify Supplier of such defects in a timely fashion (and in any event within 60 days of discovering such defects) and concurrently propose how to settle any claims relevant to such defects. Buyer is to monitor any defect in the contractual products, and shall thereupon submit documentation of any such defect (e.g., photographs) to Supplier, and Supplier shall respond in writing to any claim made by Buyer pursuant to this Section XV within 30 days from the delivery of such claim by Buyer to Supplier. The claim shall be settled by agreement of the Parties; provided, upon any further disagreement, the matter shall be settled by arbitration per Section XVI below. To support any claim by Buyer, Buyer is obliged to keep claimed piano tops and legs in the inventory at least for one year.

## Section XVI – Governing Law/ Arbitration Clause

This Contract shall be governed by laws of Czech Republic that, except as otherwise provided in Section VII.2 above or elsewhere herein, controls all legal states of affairs ensuing from this Contract. The Parties will attempt in good faith to resolve any dispute arising out of or relating

205257/0007/411263/Version #:.5

o this Contract promptly by negotiations between the Parties.  Either Party may give the other party notice of any such dispute which is not resolved in the ordinary course of business between the Parties.  Within a reasonable period of time after delivery of such notice (typically 20 days), the Parties will meet at a mutually acceptable time and place to exchange information and attempt to resolve the dispute.  If the dispute has not been resolved within 60 days of the disputing Party's notice, or the Parties fail to meet within a reasonable time, either Party may initiate arbitration under this Section XVI.  Any dispute arising out of or related to this Contract and not resolved either in the ordinary course of business or through the dispute resolution mechanism provided for in this Section XVI, shall be settled through arbitration procedure in accordance with Rules of the Arbitration Court of Chamber of Commerce and Agrarian Chamber of Czech Republic. Each Party undertakes to accept the proposal of reconciliation, or arbitration founding and shall abide by it.   English, and or Czech language shall be the language of negotiation between the Parties.

## Section XVII - Notice

Any notice, request, demand, or other communication required or permitted hereunder shall be in writing and deemed to be properly given when delivered to an international courier service for transmittal, charges prepaid, with a fax copy to the party being so notified, addressed as follows:

In the case of Supplier, to:

JAN PETROF, Chairman

TOVÁRNA NA PIANA, A.S. (or PETROF, LTD.)

BRNSKÁ 207

500 06 HRADEC KRÁLOV

CZECH REPUBLIC

Fax Number: +420 (49) 526 71 58

or to such other person or address as Supplier may from time to time furnish to Buyer.

In the case of Buyer, to:

EARL MATZKIN, President

GENEVA INTERNATIONAL CORPORATION

29 EAST HINTZ ROAD

WHEELING, IL  60090

USA

Fax Number: [USA country code] (847) 520-9593

or to such other person or address as Buyer may from time to time furnish to Supplier.

Notice shall be effective three (3) days after delivery to an international courier service.

## Section XVIII - Principles of Cooperation and Good Faith

At fulfillment of obligations under this Contract both parties shall act in trust and in accordance with good practices of business (good faith).  All preliminary negotiations, discussions, oral statements related to the period of effectiveness hereof, e.g. correspondence, mutual opinions, agreements etc. are understood to be null and void by the execution by the Parties of this Contract.

## Section XIX – Relationship of the Parties

The Parties to this Contract are independent, contracting parties.  Nothing in this Contract shall be construed to create a partnership, joint venture, or agency relationship between the Parties, and neither Party is entitled to assume liabilities or make any contractual commitments on behalf of the other Party.

## Section XX – Assignment

Neither Party shall assign any interest or right under this Contract to any third party without the prior written consent of the other Party.

## Section XXI - Drawing up Contract

Both Czech and English language versions of this Contract shall be written, and each version shall have the same force.  Each Party shall receive copies of each version of this Contract.

### (SIGNATURES ON THE FOLLOWING PAGE)

IN WITNESS WHEREOF, the Parties have executed this Contract this _24TH_ day of _MAY_, 2001.

SUPPLIER:                                   BUYER:

TOVÁRNA NA PIANA, a.s.                      GENEVA INTERNATIONAL CORPORATION

By: _____          By: _____
Jan Petrof, Chairman of the Board         Earl Matzkin, President
and Commercial Director

PETROF, LTD.

By: _____
Jan Petrof, [Chairman of the Board
and Commercial Director]   **[Please confirm or supply correct title and position]**



Ověřuji, že tento opis souhlasí
doslovně s listinou, z níž byl
pořízen, složenou z _9_ stran,
_9_ archů. Tento opis je úplný
a obsahuje _9_ stran _9_ archů.
                2 1. 11. 2007
V Hradci Králové dne

**Mgr. Dana JINDROVÁ**
notářská kandidátka
v zastoupení JUDr. Heleny Divišové
notářky v Hradci Králové

9                                           205257/0007/411263/Version #:.5



## APOSTILLE
(Convention de La Haye du 5 octobre 1961)

1. **Česká republika**
   **Czech Republic**

   Tato veřejná listina
   This public document

2. byla podepsána ...............................................................................
   has been signed        Mgr. Danou Jindrovou

3. jehož funkce ....... ..........................................................................
   acting in the capacity of    notářská kandidátka

4. opatřena razítkem .........................................................................
   bears the seal/stamp of     JUDr. Helena Divišová, notářka v Hradci Králové

   ...............................................................................................

### OVĚŘENO
### CERTIFIED

5. v Praze               6. dne 26.11.2007
   at  Prague             date

7. **Ministerstvo spravedlnosti ČR**
   **Ministry of Justice of the Czech Republic**

8. čís. 9358/2007
   N°

9. kolek/razítko:                        10. Podpis: Stejskalová
   duty stamp/stamp:                    Signature



   .....................................           .....................................

# EXHIBIT 2

<u>Translation from the Czech Language</u>

<u>to</u>

<u>the English Language</u>

COPY

The arbitration award issued by the Arbitration Court
at the Chamber of Commerce of the Czech Republic
and Agrarian Chamber of the Czech Republic inured
on October 12, 2007, and it is judicially enforceable.
In Prague dated November 14,2007

Rsp 484/07

Notary Secretary
Markéta Jiříčková

# Arbitration Award

## Of the Arbitration Court at the Chamber of Commerce of the Czech Republic and Agrarian Chamber of the Czech Republic

**In the lawsuit of the Plaintiff :PETROF, spol. s r. o.,** Id.No. 620 28 634, Brněnská 371,
Hradec Králové, Postcode 500 06, Czech Republic

**Represented by:**

Mgr. Pavel Vidura, Advocate, seated in Ostrava,
Na Hradbách 18, Postcode 702 00

Against

**Defendant:**

**Geneva International Corporation**, seated 29 Fast Hintz
Road, Wheeling, IL 60090, USA

**Represented by:**

Mgr. Ing. Martin Lukáš, Advocate, seated Karlovo nám. 4,
Prague 2, Postcode 120 00

**On:**

USD 134, 182.- including appurtenances

## Admitted by

JUDr. Pavel Fráňa, Ph.D.        as Chairman of the Arbitration Senate
Mgr. Martin Hrodek              as Arbitrator
Dr. Vít Horáček                 as Arbitrator

After oral negotiations dated 4 September 2007

## Pursuant to the law, as follows:

1    The Defendant Geneva International Corporation, seated 29 Fast Hintz Road, Wheeling, IL
     60090, U.S.A., is obliged to pay to the Plaintiff the amount of USD 134,182.00 and, further,
     default interest of 9.25 % p.a. from the amount of USD 134,182.00 since 2 March 2007 till
     payment, all that in 15 days from the arbitration award effectiveness.

2    The Defendant is obliged to pay the Plaintiff a part of the paid fee for the arbitration
     proceedings in the amount of CZK 168,747.- (a fee without a 50 % increase), administrative
     expenses of the Arbitration Court in the amount of CZK 145,000.- ,and cost related to
     translation of the suit in the amount of CZK 6,891.90, in 3 days from the arbitration award
     effectiveness.

3    The Defendant is obliged to pay the Plaintiff the cost of legal representation in the amount of CZK 116,379.- , and, further, travel expenses, including time loss, in the amount of CZK 7,893.90, in 15 days from the arbitration award effectiveness.

4    A part of the advance payment for special cost in the amount of CZK 3,108.10 is returned to the Plaintiff.

5    The present arbitration award is final and decisive, the legitimate judicial decision enters into the efficiency upon its delivery to both Parties, simultaneously becoming executable (§ 28, Par. 2 of the Act No. 216/1994 Coll. on arbitration proceedings and execution of arbitration awards).

## Justification:

## I

## THE SUIT DATED 28 May 2007

By its suit delivered to the Arbitration Court at the Chamber of Commerce of the Czech Republic and Agrarian Chamber of the Czech Republic (hereinafter just "AC") on 29 May 2007, the Plaintiff claimed for an arbitration award to be issued in the accelerated proceedings pursuant to which the Defendant would be obliged to pay the Plaintiff the amount of USD 134,182.- including a 9.25 % annual default interest from the amount of USD134,182.- from 2 March 2007 till payment, and arbitration proceedings cost, all that in 3 days since the present arbitration award delivery.

The Plaintiff justified its suit claim by that on 24 May 2001, the Agreement of Exclusive Sale (hereinafter just the **"Agreement"**) had been entered into between and by the legal predecessor of the Plaintiff – Továrna na piana, a.s. (Piano Works, joint-stock company) , the Plaintiff, and Defendant, which subject is determination of rights and obligations of the Contracting Parties regarding sale of contractual products defined in the Article II of the Agreement, covering upright pianos and pianos manufactured by the contractor, inter alia, under the following trademarks: Petrof, Weinbach, Rosler, Scholze and Fibich ( as well as any other pianos made by the contractor at present or anytime for the Agreement validity duration) at the area of the USA, when the sale is made by the Defendant. On 10 June 2003, the Appendix to the Agreement was entered into, and, on 29 April 2004, the Appendix No. 2 to the Agreement was entered into. Based on the Agreement and applied practice between the Parties, the Defendant ordered, Plaintiff supplied, Defendant took over and Plaintiff charged, contractual products, when the goods, together with a price, are specified in respective invoices and confirmations. A maturity term was agreed as 90 days from a respective invoice date, or from a date of the goods dispatch from the factory of the Plaintiff. The delivered goods were ordered and charged.

Further, the Plaintiff presented its opinion that the respective Defendant itself confirmed the justification of claims by the Plaintiff regarding the purchase price payment, when it had tried to make a unilateral set-off against the Plaintiff´s receivables by sending the Plaintiff unilateral set-off of receivables to the Plaintiff´receivables on 19 March 2007, particularly to the amount of USD 120,000.- .The Defendant sent the mentioned set-off after exercising its supposed receivable in the amount of USD 246,323.68 , when the receivable exercise was made through its attorney in form of an official letter dated 9 March 2007. This exercised supposed receivable of the Defendant was rejected by the attorney of the Plaintiff in the official letter of 19 March 2007. The Plaintiff through its attorney rejected the set-off of receivables in the official letter of 22 March 2007, when it also asked for negotiations regarding disputable matters as required in the Agreement Article XVI. This request was responded by the attorney of the Defendant by a fax message dated 26 March 2007 and, based on a following agreement, the attorneys of the Parties met to negotiations on 11 April 2007 in Prague,

however, reaching no settlement of the case. The Plaintiff did not admit the unilateral set-off of the Defendant considering it to be invalid, when, firstly, the Plaintiff does not admit existence of any receivable of the Defendant to the Plaintiff, due to any legitimate reason, and, further, considering the effort for the set-off from the side of the defendant to be invalid.

Further, the Plaintiff presents grounds why it does not admit existence of the receivable as its payment was required by the Defendant in the official letter by the attorney dated 9 March 2007. Particularly:

1   The Defendant did not follow a procedure for claims settlement as defined in the Agreement.

2   The Defendant breached a contractually agreed claim procedure, particularly in items as follows:
    a) It did not inform the Plaintiff of failures in the agreed term of 60 days as maximum since the failures finding;
    b) It did not propose the Plaintiff how to settle any and all claims regarding potential failures, if any;
    c) It did not present any documentation to any of potential failures to the Plaintiff;
    d) Since the Defendant has never claimed potential failures at the Plaintiff before, such potential failures could never be settled between and by the Parties, and the Defendant breaches the agreed claim procedure also because it has never initiated any negotiations of the Parties regarding potential failures, when, in case of pending disputes, the failures should have been settled in form of separate arbitration proceedings, all that in accordance with the Agreement Article XV, last clause.

3   The Defendant – customer, is obliged, pursuant to the Article XV of the Agreement – claim procedure, to remove small failures of products within his services and at his own cost. However, according to the official letter dated 9 March 2007, failures of soundboards are not evident, the potential failures are not specified sufficiently certainly. Therefore, it is not possible to determine at all whether the failures are serious (e.g. broken soundboard), or small failures, which the Defendant – customer is obliged to remove at his cost. In the meaning of the Article 39 Par. 1 of the UN Convention on Agreements and International Sale of Goods (hereinafter just the **"CISG"**), the nature of the failures was not sufficiently specified by the Defendant, when the list of potential failures attached to the official letter of the attorney of the Defendant of 9 March 2007 (Petrof Soundboard Failures 2004 through February 2007 – Revised 3/7/07), no specification of failures is mentioned.

4   Since, in the contrary to the agreed claim procedure, the Defendant did not notify the Plaintiff of failures in the agreed term of 60 days as maximum from the failures revealing, then, in the meaning of the Article 39 Par. 1 of CISG, the rights of the Defendant from potential goods failures, were precluded.

5   A breach of the claim procedure by the Defendant is further evident from that potential failures were not exercised in the meaning of the Article 9 Par. 1 of CISG in accordance with practice having been applied within claims between the Parties.

6   Further, the unjustification of the Defendant´s claim for the loss compensation in relation to a list of potential failures, attached to the official letter dated 9 March 2007, follows also

from the fact that, in the respective period, claims by the Defendant took place in compliance with the applied practice of the Parties. Potential failures from the list of the Defendant dated 9 March 2007 have never been reported to the Plaintiff, despite proper claim procedures, within which claims by the Defendant were exercised in accordance with the agreed claim procedure and applied practice of the Parties.

7   Since the Defendant itself removed potential failures, according to its list of 9 March 2007, without any notification and co-acting of the Plaintiff, the Defendant relieved the Plaintiff from any possibility to settle the failures in compliance with the agreed claim procedure and applied practice of the Parties, and, also because of that, potential rights in relation to the goods failure against the Plaintiff became extinct to the Defendant.

8   The Defendant further exercised its claim in controversy to the Settlement Agreement executed between and by Parties on 29 April 2004. In was agreed in the Article 2 *Claims Withdrawal and Settlement*, Par. 2.4 of the Settlement Agreement that "Each Party hereby waives from any and all rights or potential claims, especially for loss compensation, which it can have regarding events occurring prior to the Settlement Agreement efficiency". A list of the Defendant dated 9 March 2007 comprises 18 cases claimed prior to the Settlement Agreement efficiency. Some of them were even claimed in 2002 and 2003.

Following from the above mentioned, the Plaintiff considers the receivables exercised by the Defendant and stated by it in the Unilateral Receivables Set-off of 19 March 2007, have never occurred and, therefore, have not been qualified to be set off.

In addition, according to its opinion, the respective set-off is an invalid legal act irrespective the non-existence of any receivable of the Defendant due to its uncertainty in the meaning of § 37 Par. 1 of the Act No. 40/1964 Coll., Civil Code, since the Defendant in its unilateral receivable set-off, Article 2 Receivables of the Company PETROF against the Company Geneva, states in its last clause: "*The receivable was charged by the company Geneva by the invoices No. XXX and XXX*". It should be clear and evident within the mutual receivable set-off which particular receivable of a party is set off against a particular receivable of the other party. Further, the amount of the Plaintiff's trade receivable against the Defendant, i.e. USD 120,000.- is presented wrongly, since the amount of the Plaintiff's trade receivable against the Defendant totally equals USD 134,182.-.

Up to now, the Defendant has not paid anything in relation to the specified purchase price of the total amount of USD 134,182.- , irrespective that the Plaintiff does not admit the effort of the Defendant to make the set-off.

Therefore, a right for a default interest should be admitted to the Plaintiff to be calculated since the first day of delay, i.e. since 20 March 2007, in the amount specified in accordance with § 735 of the Act No. 513/1991 Coll., Commercial Code. Since with the efficiency since 29 June 2006, i.e. also on the first day of delay, the U.S. Prime Rate determined by The Federal Open Market Committee equaled 8.25 %, then, after increase by 1 %, the default interest rate equals 9.25 % p.a.

**THE SUIT REPLY DATED 24 JULY 2007**

The Defendant presented its standpoint to the suit in its suit reply of 24 July 2007 delivered to the Arbitration Court on 25 July 2007. It stated that in the respective stage of the proceedings it considered incontestable that:

1    On 24 May 2001, the Agreement was executed between and by the Plaintiff and Defendant.
2    The Article XVI in the Agreement comprises an arbitration clause founding the competence and jurisdiction of the Arbitration Court.

Further, the Defendant states the Article XVI of the Agreement comprises the stipulation being quoted, too: *"the Parties shall make efforts to settle in good will any dispute following from the Agreement or related to it immediately by mutual negotiations. Either Party can notify the other Party of any such dispute not settled within usual trade relations between the Parties. The Parties shall meet in a reasonable period since the notice delivery (usually 20 days) at mutually acceptable time and place to exchange information and try to settle the dispute. If the dispute is not resolved in 60 days since the notice by the requiring Party and its resolution or, if the Parties fail to meet in a reasonable period, then either Party is entitled to initiate arbitration proceedings according to the present Article XVI".* Referring to the above mentioned, the Defendant states the Plaintiff, regarding the receivable stated by it, did not initiate (did not try to initiate) any proceedings as supposed in the Agreement. Because of that, the Plaintiff is deemed to breach the quoted Article of the Agreement, which consequence is that the suit was filed prematurely (it is not so-called action nata), when the Plaintiff did not meet all obligations necessary to proper suit negotiations,. Therefore, the Defendant suggested to reject the filed suit due to its prematurity.

For case the Arbitration Court does not identify itself with the objection of premature suit filing, the Defendant presented following arguments:
The Defendant made undisputable statements presented in the Article II of the arbitration suit stating the goods supply and related charging non-disputing should not be deemed in any case to be admission, either with process law effects or even substantial law effects. Further, it identified itself with the legal qualification of the Plaintiff stating the legal relation of the Parties is governed by the CISG.

The Defendant continues to consist on its receivable for the loss compensation in the amount of USD 246,323.68. The receivable was calculated by the Defendant and, on 9 March 2007, it sent it through its attorney to the Plaintiff requiring its covering. Upon that moment, the receivable for the loss compensation became effective in accordance with provisions of § 563 of the Civil Code. The loss particularly consists of:

(i)     Cost for transportation of the faulty upright piano from the customer/dealer to the Defendant´s seat;
(ii)    Cost for repair of the faulty upright piano, while in case of bigger breaks of the frame always the whole faulty upright piano part was always replaced by a new part delivered by the Plaintiff to the Defendant;
(iii)   Cost for transportation of the repaired upright piano back from the Defendant to the customer/dealer;
(iv)    Allowance which the Defendant should provide to a dealer who sold the repaired upright piano in the B quality, not in the former (top available( A quality, in form of a credit note.

The Defendant only states the mentioned receivable, and it will deliver the instruments proving the receivable occurrence and duration to the Arbitration Court consequently. The Defendant states that on 19 March 2007, it made partial set-off of its due and payable receivable in the amount of USD 120,000.- against the due and payable receivable of the Plaintiff exercised in the present proceedings.

As for the objection by the Plaintiff that the Defendant did not follow in accordance with the Agreement in the matter of the failure notification, the Defendant states that, as stated in the suit, also the practice of the Parties in the failure claim rather differed from the procedure agreed in the Agreement, when the contractually agreed procedure would result into unnecessarily long claim settlement, sales decrease and loss of the good reputation of products of the Defendant. This is what the Parties aimed to avoid. However, the Defendant added that, in each case, it had followed the practice applied by the Parties in claims, more or less described by the Plaintiff in the Article IV.5 of the suit.

The Defendant exercised its claim for the loss compensation independently on claims incurred due to the liability for faults existing in accordance with the CISG independently on the right to claim for the loss compensation. In accordance with the Article 45 Par. 2 of the CISG, *"the Purchaser is not waived from the right he can have to exercise a loss compensation if the Purchaser exercises a right for other compensations"*. Since the Defendant did not exercise a right of liability for fault but for the loss compensation, a claim procedure described in the Article XV of the Agreement is not decisive for existence of the claim due to the loss compensation. Therefore, the Defendant exercised its claim for the loss compensation fully in accordance with the Articles 74 to 77 of the CISG. Further, the Defendant states that all faults in relation to which the loss compensation is exercised are of a serious character in the meaning of the Article 15 of the Agreement and, that the Plaintiff was always informed of them in informal way – by phone, e-mail or fax. A way of information was not defined in the Agreement, and the Parties agreed to practice informal notification of faults. Sometimes also special forms with the Plaintiff´s logo were completed and sent.

As to the objection of the Plaintiff that the set-off is not valid due to the uncertainty pursuant to provisions of § 37 of the Civil Code, the Defendant states it does not identify itself with that legal qualification, presenting provisions of § 266 Par. 1 of the Commercial Code according to which *the will demonstration is construed depending on the intention of a respective acting person provided the intention was known or had to be known to the Party the will demonstration is intended to*. In this connection, the Defendant stated the Plaintiff knew the loss amount claimed by the Plaintiff, the document clearly contains the intention to set off the amount of USD 120,000.-, and, further, the Plaintiff undoubtedly knew that at time of the set-off, four trade receivables existed which total amount was USD 134,182.- , and to which the set-off was made by he Defendant.

In its standpoint to the remaining receivable of the Plaintiff in the amount of USD 14,182.- ( a balance between USD 134,182.- and USD 120,000.-), the Defendant made a set-off of a part of its counter-receivable due to the loss compensation.
Further, the Defendant made in its standpoint a set-off of its own receivable for the loss compensation in the amount of USD 246,323.68 for the Plaintiff´s receivable in the amount of USD 134,182.- for case that the Arbitration Court would identify itself with the objection of the former set-off uncertainty. It makes the set-off as defense, and the Defendant did not lodge a counteraction.
The Defendant presented its standpoint that the compensation objection arisen by it with reference to provisions of § 28 Par. 3 of the Arbitration Court Code for international disputes is not subjected to any fee obligation.
At the conclusion the Defendant suggested to the Arbitration Court to issue an arbitration award dismissing the complaint.

## ADDITION TO THE CLAIM REPLY DATED 7 AUGUST 2007

On 7 August 2007, the Defendant delivered to the Arbitration Court its addition to the claim reply attaching documents to the proof referring to in its claim reply dated 24 July 2007. In this addition, it states that all expenses for repairs were not known to it at time of the reply preparation,

and that the expenses were only estimated in some cases. Following due addition of any and all expenses, the total loss of the Defendant due to faulty pianos stated in the claim equals USD 128,733.89. The Defendant, in order to avoid potential objections by the Plaintiff, stated that, at the most recent lodging, it set off its receivable following from the loss compensation in relation to particularly defined pianos to the claimed receivable and, in that lodging, it only specified the loss amount more precisely and, due to the process carefulness, repeated its objection as for the set-off and set off the amount of USD 128,733.89 to the claimed amount.

Further, the Defendant established correspondence of the Parties proving the long-term faults.

## ADDITION TO THE CLAIM REPLY DATED 9 AUGUST 2007

In its further addition delivered to the Arbitration Court on 9 August 2007, the Defendant presents and attaches proofs regarding the Parties settlement dated 29 April 2004 and regarding notification of Parties of a different claim procedure than defined in the Agreement, as well as the obligation of the Plaintiff to cover a loss incurred to the Defendant due to faulty pianos.

## STANDPOINT OF THE PLAINTIFF TO THE CLAIM REPLY AND ADDITION DATED 7 AUGUST 2007 AND 9 AUGUST 2007

The Plaintiff in its lodging delivered to the Arbitration Court on 29 August 2007 presented its opinion to the content of the claim reply dated 24 July 2007, addition dated 7 August 2007, and addition dated 9 August 2007.

As to the objection regarding the claim prematurity, the Plaintiff stated it was not we—founded, that the Plaintiff had followed a procedure according to the Agreement and, rightly due to the amicable settlement, the attorneys of the Parties had met on 11 April 2007 in Prague, at the seat of the attorney of the Defendant. This statement and proofs are already included in the suit, and it added that the suit was lodged more than 60 days from the call by the Plaintiff´s attorney. Just for the completeness it states that the Defendant´s statement is purely purpose-aimed when it itself filed on 19 March 2007 a motion for bankruptcy declaration to the Plaintiff´s property because of the stated Defendant´s claim which was refused, especially due to absence of proof of the stated claim forming a background for its defense within the pending proceedings at the Arbitration Court.

The Plaintiff states its standpoint to the executed set-offs and receivables exercised by the Defendant in particular proceedings. Further, the Plaintiff emphasizes the difference of lists submitted when exercising the receivables. The Plaintiff considers the set-offs to be invalid and emphasizes that the form of defense as well as compensation are chosen by the Defendant intentionally in order not to have to prove the suggested loss and its occurrence in the position of the Plaintiff. It emphasizes that when the Defendant did not know a particular amount of its receivable at time of the set-off execution, then it could not be precise and existence and, therefore, qualified to set-off.

The Plaintiff specifies faults which had to be notified to the Defendant prior to execution of the Settlement Agreement on 29 April 2004 and, therefore, the Defendant is not entitled to exercise such claims.

The Plaintiff does not agree that the Defendant could claim for the loss compensation pursuant to the Articles 74 to 77 of the CISG particularly because it was not a supply of faulty products. The Defendant took them over without any objection to their quality, and faults of the type of "broken resonation instrument board" are guarantee faults and, as such, they had and have to be solved. The Defendant by its procedure in practice deprived the Plaintiff, which is a world-known producer of pianos and upright pianos, of a possibility to execute the warranty granted for supplied instruments.

The Plaintiff emphasizes the Defendant is obliged to state and prove what particular obligation was breached, and what is a causal relationship between such potential breach and loss contingently incurred to the Defendant. In addition, the Defendant does not prove in any way that the goods were delivered faulty.

The Plaintiff does not agree with interpretation of letters by Mgr. Zuzana Ceralová – Petrofová dated 3 July 2002 stating it was just a proposal how to settle matters regarding the instruments older than 3 years, which, however, had never been accepted by the Defendant and, based on its statement, had never been followed. The problem was only solved based on proper claims by the Defendant, in form of a price allowance granting.

## II

## JURISDICTION OF THE ARBITRATION COURT

The jurisdiction of the Arbitration Court is based by the arbitration clause contained in the Article XVI of the Agreement – Governing Law and Arbitration Clause, which reads: *"Any dispute following from hereof or regarding hereto not settled within usual trade relations or through dispute settlement mechanisms set forth in the present Article XVI shall be resolved in the arbitration proceedings in compliance with the Rules of the Arbitration Court at the Chamber of Commerce of the Czech Republic and Agrarian Chamber of the Czech Republic.*
The Plaintiff appointed Mgr. Martin Hrodek to act as the arbitrator, and the Defendant appointed Dr. Vít Horáček to the position of the arbitrator. The arbitrators chose JUDr. Pavel Fráňa Ph.D. to act as the Chairman, by which the Arbitration Senate was duly chosen.

## III

## ORAL NEGOTIATIONS

On 4 September 2007, oral negotiations took place participated by the attorneys of both Parties. In the introduction it was stated that the Czech language will be used as the official language since both Parties made all their lodgings in the Czech language, and, further, any and all suggested and submitted proofs were made in the Czech language.

A question by the Senate Chairman both the Plaintiff and Defendant answered they did not arise any objections against the Arbitration Senate composition.

In the course of the oral negotiations, the Plaintiff stated it fully referred to its lodgings dated 28 May 2007 and 29 August 2007.

The Defendant confirmed takeover of the above mentioned lodgings and, since it not succeeded to contact the client, it asked for a term granting to present its standpoint to the latest lodging. Further, it referred to its lodgings dated 25 July 2007, 7 August 2007, and 9 August 2007, including proofs. The Defendant further specified more precisely what its claim for the loss compensation consists in, adding that while the trade cooperation took place based on the Agreement, it did not ask for repair cost related compensation to be paid by the Plaintiff. In principle the same situation already existed in 2004 when the proceedings designated as Rsp 75/04 took place at the Arbitration Court when the proceedings were completed in April 2004 by out of the court settlement, which part was also execution of the Settlement Agreement having been already mentioned by each Party.

The Plaintiff stated it did not waive its liability for faults of the supplied goods only requiring the claims exercise in accordance with the agreed claim procedure. The claim exercise due to other reasons is, in its opinion, illegal, with respect to e.g. § 440 Par. 2 which sets forth that the liability for faults should be exercised by the Seller in that way and cannot exercise them due to any other legal title than stated herein, e.g. due to the loss liability.

The Defendant objected the claim procedure and trade practice applied between the Parties had been different from a formal procedure agreed in the Agreement. It refers to some submitted proofs.

However, the Plaintiff objected the matter were written instruments regarding the time prior to the Settlement Agreement execution.

The Defendant stated, in order to clarify the matter, that the Plaintiff wrongly applied data stated in the table contained in the reply of the Defendant dated 7 August 2007, column titled "Fault Notification to the Defendant", when the column only stated a date when the Defendant had been informed of the fault occurrence, and the date decisive for the claim purposes was not that date but the date mentioned in the column designated as "Decision" stating when the Plaintiff had decided of whether the fault was claimable or not.

Referring to that, the Plaintiff presents doubts regarding a time delay between the fault reporting to the Defendant in the last line of the first table (8 February 2002) and decision regarding the claim settlement (1 December 2005) more than 3 years, which is on contrary to any applied practice.

In the oral negotiations, all up to then proposed and submitted proofs were made to which no Party had any reservation, stating identically to the question by the Arbitration Senate Chairman that they did not propose any additions to the negotiations.

After that a resolution was issued imposing the Defendant the obligation to deliver the Arbitration Court and Plaintiff proofs in a term of 2 days submitted in oral negotiations, and the Parties were granted a period of 7 days to submit standpoints to up to them proceedings course, and, simultaneously, to submit final proposals, including calculation of exercised claims for the proceedings cost covering stating that after the mentioned term expiration a further process procedure will be decided of.

## IV

## PARTY LODGING FOLLOWING ORAL NEGOTIATIONS

On 7 September 2007, an official letter from the Defendant was delivered to the Arbitration Court dated 9 August 2007, attached by proofs in appropriate forms, having been submitted on the oral negotiations on 4 September 2007.

On 10 September 2007, the Plaintiff asked for extension of a term for standpoint and submission of a final proposal since, on the contrary to the resolution by the Arbitration Court, the proofs were delivered to it by the Defendant only on 10 September 2007. The Arbitration Court met the application and in its resolution of 11 September 2007 postponed the Plaintiff a term to submit the lodging by 14 September 2007.

On 17 September 2007, a standpoint by the Plaintiff to up to them course of the proceedings, final proposal including proceedings cost calculation as of 14 September 2007, were delivered to the Arbitration Court. The Plaintiff stated its suit exercised claim for payment of the amount of USD 134,182.- due to a purchase price compensation was clearly proved in the up to then proceedings, and the Defendant did not present any collision to that claim. Further, the Plaintiff considers the Defendant did not prove any claim stated by it against the Plaintiff referring to its former statements. On the contrary, the Defendant did not follow the agreed claim procedure, did not report the faults within a respective term and, on the contrary, arbitrarily approached to their repair, simultaneously exercising other faults at the Plaintiff in a standard way. The Defendant cannot arise claims due to the liability for faults; in addition, it did not prove and does not try to prove breach of particular obligations by the Plaintiff as well as casual relationship to the loss arisen. The Defendant did not prove arrangement of any other claim procedure than the procedure following from the Agreement. The exercise of claims due to matters settled in the Settlement Agreement dated 4 September 2007 and proofs regarding replacement of instruments not repairs, are objected again. The Plaintiff requires admission of the whole exercised claim, including proceedings cost consisting in payment of the fee, lump sum for administrative cost, advance payments for translations, cost for attorneys and travel expenses, including time loss. All that in the total amount of CZK 529,420.90-

On 17 September 2007, a lodging was delivered to the Arbitration Court from the Defendant dated 11 September 2007, in which it summarizes and adds the case and legal situation and, further, specifies a final proposal. The Defendant emphasizes that the exchange rate of the Czech crown to the US dollar has been significantly changed in the most recent 6 years and that the US dollar to the Czech crown lost approximately a half of its value. Because of that, the former Agreement was not suitable for the Plaintiff when the currency it was fulfilled was USD. Therefore, the Plaintiff had to reduce the input cost which impacted the product quality. The Defendant further adds that following the settlement in 2004, a much lower exchange rate of CZK and USD was agreed (fixed) (CZK 25.- for USD 1), which is to be considered to be clearly a gesture of goodwill. Only because an agreement on further cooperation was not reached, the Defendant did not want to further retreat and refused to cover receivables of the Plaintiff and, on the contrary, arose its counterclaims. The Defendant insists on the statement that a way of performance of warranty repairs had been changed so that the letter of 3 July 2002 by Mrs. Zuzana Ceralová – Petrofová was accepted by the Defendant as concluding so that it became to behave according to her. The Defendant presented the Arbitration Court other proofs proposing to be executed. They are to prove the repairs had to be made or arranged by the Defendant and not to send the products back over the Atlantic Ocean .
Due to the process defense, the Defendant includes in its lodging further losses up to the amount of USD 134,182.-, arising due to the supply of pianos and upright pianos where faults occurred in the warranty period. The defendant proposes to refuse the whole claim exercised by the Plaintiff and to admit to it the cost for legal representation in the amount of CZK 280,173.60.

On 18 September 2007, the Plaintiff informed the Arbitration Court that it would state its standpoint to the latest lodging of the Defendant, especially to the attached proofs, by 20 September 2007.

On 21 September 2007, the Defendant filed another proof in the dossier, particularly the affidavit of the employee of the Defendant.

On 21 September 2007, a standpoint of the Plaintiff was delivered to the Arbitration Court to add and summarize the fact and legal situation by the Defendant dated 11 September 2007 together with a consent to extend a term to decide the case. The Plaintiff in its lodging stated that, particularly with regard to further presentation of instruments to proof from the Defendant, and the need to respond appropriately to them, it agrees with extension of the term for decision in the

accelerated proceedings by 10 days. The Plaintiff noted that any and all instruments presented by the Defendant were fully irrelevant to the matter, and their presentation within a final proposal are only intended to postpone purposefully a decision in the respective case. It supports its opinion also by that the Defendant had them available already before but did not present them. The Plaintiff again emphasizes that the instrument fault consisting in the broken resonation board could not exist already when the goods were delivered, and that the faults were only reported to the Defendant by its customers according to tables presented to it after a very long time, sometimes even after several years from the products delivery to the Defendant. As for the trade relation cession, the Plaintiff states a reason was exclusively a long-term serious breaching of obligations by the Defendant. As for the telefaxes presented by the Defendant it states they were made still at time when the Agreement was not executed, and mentioned staff trainings were made in principle for a purpose to carry out after sale services within repairs of small faults. As for a proposal by the Defendant dated 22 April 2004, the Plaintiff notes Item 9 according to which all claims had to be settled till 5 May 2004, and, further, Item 10, according to which a settlement of each new claim and warranty had to be made in accordance with the Agreement. The Plaintiff notes a logical contradiction in that the stated claims were not exercised by the Defendant due to good relations, however, exercising other faults in the same period where standard claim procedures were followed. The Plaintiff again repeats a consequence of not following the claim procedures being right preclusion from warranty faults in the meaning of the Article 39 Par. 1 of the CISG. The Plaintiff does not agree that it would not be possible to apply also provisions of § 440 Par. 2 of the Commercial Code. At the conclusion it states that other proofs presented by the Defendant still remote the matter merits.

On 25 September 2007, the Arbitration Court issues a resolution by which it

1    Stated the proofing to be completed;
2    Stated negotiations to be completed;
3    Decided to issue an arbitration award in a written form due to process economy, and its delivery to the Partied without oral negotiations.

On 2 October 2007, the Plaintiff prepared a standpoint to translation of the affidavit of Mr. John O. Elliot stating it refuses to consider it to be a proof in the matter, and proposes the Arbitration Court not to take it in account at all within its decision-making. It refuses it is written in the English language in form of a so-called affidavit and that the person is an employee of the Defendant. In addition, it is not clear what the instrument is to prove, and the defendant supplements no statement to it. As for the instrument content, it does not follow from it at all that the Defendant maybe did not claim duly the warranty faults at the Plaintiff which cannot be found even from contingent discussions with some employees of the Plaintiff.

On 2 October 2007, a reply of the Defendant was delivered to the Arbitration Court to the lodging of the Plaintiff dated 20 September 2007, of 1 October 2007. The Defendant explains again a relationship between the CISG and Commercial Code concluding the regulations of the Purchase Agreement in the CISG are complex regulations, and any subsidiary of the Commercial Code is inappropriate. It notes also the Article 9 of the CISG setting the binding practices. The defendant again explains what was, in its opinion, the applied practice in complaints of products with warranty products. As a proof, it attaches other documents which should confirm that the claim procedure applied by the Parties differed from the procedure described in the Agreement, due to avoidance of long-term complaint settlement. Just to illustrate, it describes a case of a complaint settlement in accordance with the Agreement initiated on 6 August 2007. Based on that description, it states the Plaintiff is not willing to settle complaints rill a transport container filling and that it forces the Defendant to sore faulty pianos. It repeats again that the Defendant was

forced to repair faults in abroad, otherwise this would result into a huge cost growth and good reputation loss of the Plaintiff and their products in the U.S.A. as well as to adverse consequences for the Defendant.

## V

Based on the submitted written documents, lodgings and presentations of the Parties in oral negotiations, the arbitrators reached to the following findings and judicial conclusions:

## THE SUIT PREMATURITY

First of all the arbitrators deal with an objection arisen by the Defendant that the suit was lodged prematurely when the Plaintiff did not meet all obligations necessary to negotiate the suit, particularly that the Plaintiff did not initiate (did not try to initiate) any negotiations with the Defendant as supposed in the Agreement. The Article XVI of the Agreement comprising an arbitration clause which includes the covenant that *"the Parties shall make efforts to settle in good will any dispute following from the Agreement or related to it immediately by mutual negotiations. Either Party can notify the other Party of any such dispute not settled within usual trade relations between the Parties. The Parties shall meet in a reasonable period since the notice delivery (usually 20 days) at mutually acceptable time and place to exchange information and try to settle the dispute. If the dispute is not resolved in 60 days since the notice by the requiring Party and its resolution or, if the Parties fail to meet in a reasonable period, then either Party is entitled to initiate arbitration proceedings according to the present Article XVI"*. The Plaintiff in its suit described how and why it asked the Defendant to negotiate disputable matters of the proceedings as required in the Agreement, what it proved by a request as well as by a response by the Defendant. Simultaneously it stated a meeting of the attorneys of the Parties took place, particularly on 11 April 2007 in Prague. The Defendant did not appeal against the meeting execution. The arbitrators came to the conclusion that the suit had not been lodged prematurely and, therefore, its negotiations were appropriate. It should be noted that, in the opinion of the arbitrators, such agreed conditions do not avoid the suit proceedings, and their hypothetic breach does not cause the suit prematurity. To complete it, it is should be stated the arbitrators consider the provision of the Article XVI determining a way of negotiations prior to the litigation initiation was followed by the Plaintiff.

## PROOFS PRESENTED AFTER THE ORAL PROCEEDINGS

Following the oral proceedings dated 4 September 2007, the disputing Parties delivered further proofs to the Arbitration Court.

The Plaintiff presented:

Copy of the first notification dated 6 January 2004 according to the Article 16 of the Agreement of Exclusive Sale;
Copy of the second notification dated 29 January 2004 according to the Article 16 of the Agreement of Exclusive Sale;
Copy of the official letter of the Defendant dated 22 April 2004, including a response of the Plaintiff;
Copy of the translation of the official letter of the Defendant dated 22 April 2004, including a response of the Plaintiff.

The Defendant:

USD-CZK exchange rate history
Agreement of the USD-CZK Fixed Exchange Rate of 28 February 2006

Business Plan of the Plaintiff for 2005
A table prepared by the Defendant stating usual time demands for repairs
Telefax from Mr. Karel Hofman, Sales Manager of the Plaintiff, dated 1 February 2001
Telefax from Ing. Jan Petrof dated 27 March 2007
Conclusions from the meeting between the Parties dated 10 June 2001
Telefax from Mrs. Martina Barešová dated 17 December 2001
E-mail sent by Mrs. Barešová to Mr. Heaton dated 26 March 2004
Notification of lodging of two proposals to establish a judge lien to real estates of the Plaintiff
A table indicating losses of pianos 587765, 583883, 586260, 590013
Documents to particular pianos numbers 587765, 583883, 586260, 590013 proving the loss amount
Affidavit of Mr. John O. Elliot

In accordance with § 31 of the Code of the Arbitration Court, the arbitrators reached a conclusion that proofs presented by the Parties following the negotiations will be made already without further negotiations ordering since they are exclusively paper documents having been available to any and all proceedings Parties and, therefore they could present their standpoints to them which they mostly also did. On 25 September 2007, the Arbitration Senate declared in its resolution the proofing to be completed.

The Defendant to its lodging of 1 October 2007 delivered to the Arbitration Court on 2 October 2007 submitted further proofs, the same was made by the Plaintiff at its lodging dated 5 October 2007, which the Arbitration Senate decided not to execute in relation to the mentioned resolution dated 25 September 2007. However, the Arbitration Senate did not consider the argumentation contained in the respective lodging.

## RECEIVABLE OF THE PLAINTIFF

In its suit, the Plaintiff exercised its claim for payment of a receivable in the amount of USD 134,182.- with a 9.25 % default interest p.a. from the amount of USD 134,182.- of 2 March 2007 till payment. The arbitrators reached a conclusion that the mentioned receivable actually existed while the Defendant did not present any contraction as for its existence and amount. In addition, the Defendant by its act trying to set off unilaterally its receivables against the Plaintiff´s claims, sent on 19 March 2007 to the Plaintiff, practically also admitted the existence of the Plaintiff´s receivable at the time of the act execution aimed to the unilateral set-off of mutual receivables. Because of that, in the opinion of the arbitrators, the whole proceedings became closer concentrating on the problem of the defense of the Defendant which argued by extinction of almost the whole claimed receivable, rightly due to the performed set-off and, in addition, it made actions also in the course of the proceedings aimed to the set-off and thus also extinction of the receivable claimed by the Plaintiff.
The arbitrators considered to be proved that the Defendant had been in delay with payment of the amount since 2 March 2007, and that the default interest the Plaintiff was entitled to claim for equaled 9.25 % p.a. of the due amount.

## RECEIVABLE OF THE DEFENDANT

The arbitrators considered whether a receivable had arisen to the Defendant against the Plaintiff in relation to the Agreement performance, and what was its amount. The Plaintiff itself admitted in its suit that the Defendant stated its receivable against in for the loss compensation in the amount of USD 246,323.68 calculated by the Defendant and sent to the Plaintiff on 9 March 2007.

The Defendant in its statement to the suit actually confirmed its own receivable for the loss compensation in the amount of USD 246,323.68 , further stating that on 19 March 2007, it had made a partial set-off of the amount of USD 120,000.- of its valid receivable against the due and payable receivable of the Plaintiff. Simultaneously, the Defendant made an act aimed to setting off of another part of its receivable against the Plaintiff´s receivable, particularly in the amount of USD 14,182.- , by which the total principal exercised herein by the Plaintiff would be set off. In the same lodging the Defendant made another set-off, in the amount of USD 134,182.- , as defense, for case that the Arbitration Court would identify itself with the objection of the former set-off uncertainty. In this point the arbitrators comment that the uncertainty was asserted only in case of the set-off of USD 120,000.- , and prior to application of the new set-off of USD 134,182., the Defendant had executed already another set-off in the amount of USD 14,182.- , so that totally the Defendant has already set off the amount of USD 148,364.

In its lodging dated 7 August 2007 the Defendant stated that, following careful calculation of any and all costs, the total loss of the Defendant from faulty pianos described in the suit equaled USD 128,733.89. Because of that, the information should be considered to be more precise loss amount and, due to the process carefulness, the Defendant repeated its objection regarding the set-off, setting off the amount of USD 128,733.89 to the claimed amount.

The arbitrators arrived at a conclusion that, specifying the loss amount in its lodging dated 7 August 2007, the Defendant factually admitted that any and all set-offs having been made before, were not valid due to their uncertainty as minimum, when the Defendant had set off and specified a receivable to setting off which it itself later refused and calculated differently. Thus, just one exercised receivable remained as defense, in the amount of USD 128,733.89, which was exercised including the set-off objection dated 7 August 2007. Another loss exercise and, simultaneously, set-off up to the amount of USD 134,182.-, were made by the Defendant in its lodging of 19 July 2007.

In order to be able to assess whether the receivable of USD 134,182.- existed, the arbitrators had firstly consider the objection of the Plaintiff which, for case of the goods faults existence, objected a right of preclusion of the Defendant from such potential faults referring to the Article 39 Par. 1 of the CISG and, further, whether the claim procedure agreed in the Article 15 of the Agreement, or another claim procedure agreed between and by the Parties, replacing that one agreed in the Agreement, was followed by the Defendant.

In opinion of the Plaintiff, the claim procedure stated in the Agreement, should be strictly followed. The Plaintiff further explained what the potential covenants between the Parties dealt with, provided a rather different procedure is followed. On the contrary, the Defendant argued that the claim procedure agreed in the Agreement had not been followed in principle by the Parties, and claims had been made in a different way, informally, particularly in order to eliminate significant postponements and delays with claimed faults removal, cost saving, and good reputation keeping both of the Plaintiff and Defendant, at the U.S. market. The Defendant refused the objection of preclusion stating, on the contrary, that the Article 45 Par. 2 of the CISG should be applied, in which a purchaser is not reprieved from its right which he can have to exercise a loss compensation provided the purchaser exercises a right for other compensations. Further, The Defendant argued that the exercised claim was not due to the loss liability but due to loss compensation and, therefore, the claim procedure described in the Article 15 of the Agreement as not decisive for existence of the respective receivable.

The arbitrators arrived at a conclusion that a claim procedure had been agreed between and by the Parties in the Article 15 of the Agreement which was later changed, which, however, was not affected by the fact that some different procedures had to be taken in some partial cases between the Parties. Therefore, it is decisive for any claim exercising by the Defendant to follow a claim procedure agreed between and by the Parties or not. The Defendant in the cases exercised by it at the court as defense, did not follow the claim procedure agreed in the Agreement, which it itself in

principle admitted by its argumentation, trying to explain why the Parties had followed a different procedure in the particular cases from the procedure having been agreed in the Agreement. The faults occurring later were really hidden faults and, after having been revealed, or since a moment the Defendant was informed of them, it should exercise them in form of a claim. If it failed to do so, the Article 39 of the CISG should be applied which defines that a right of a purchaser from the goods defects becomes extinct if the purchaser fails to notify the seller of the defect nature in a reasonable time when the purchaser revealed or should reveal them. It was not necessary to investigate a time reasonability since it was agreed between and by the Parties as a period of 60 days, and, in addition, the Defendant exercised them factually much later. A procedure according to the Article 45 of the CISG is not appropriate in this particular case since an essential precondition, being a breach of obligations of the Seller of the Purchase Agreement, is not met in this case. The Defendant, although not referring to that Article, did not specify a particular obligation breached by the Plaintiff, and, in opinion of the Arbitration Senate, could not breach at all in relation to not reported faults, when it was not aware of the objected faults. In relation to the above mentioned conclusions, the Arbitration Senate considers that the receivable of the amount of USD 134,182.- did not arise to the Defendant against the Plaintiff, and, therefore, it could not perform a valid set-off, and thus the receivable exercised by the Plaintiff in the respective proceedings did not become extinct. In relation to the mentioned conclusions, the Arbitrators will not settle particular proofs proving the loss and its amount. For the completeness, however, it should be noted that most faults exercised by the Defendant are dated back to the period prior to the Settlement Agreement execution and, because of that, their settlement and extinction occurred.

## CISG APPLICATION

The arbitrators arrived at a conclusion that the CISG application in this particular case is appropriate. The matter covers a contractual relation which the CISG regulations apply to, and its application was confirmed by both Parties in their lodgings.

The arbitrators did not deal with reasons which the cooperation had been ceased for, since this is not substantial for a decision to be made in the particular case. Further, the arbitrators did not deal with reasons resulting to previous disputes ended by the Settlement Agreement of 4 September 2007.

## TERM FOR THE ARBITRATION AWARD ISSUE

The Defendant by its lodging dated 5 October 2007, which was delivered to the Arbitration Court on 8 October 2007, extended a term for decision in the accelerated proceedings by 7 days from a lodging day, i.e. till 12 October 2007.

## A DECISION OF THE COST

The Plaintiff was fully successful in the case and, since the proceedings cost is decided of according to the principle of a party success in the case and, pursuant to § 8 and 12 of the Rules on Arbitration Proceedings Cost, being a part of the Code of the Arbitration Court, the Defendant should cover the cost for legal representation, part of the fee for arbitration proceedings in the amount corresponding to usual proceedings, not in the accelerated form ( this part in the amount of CZK 84,373.- should be paid by the Plaintiff) , administrative expenses of the Arbitration Court and cost related to the translation of the suit while not used cost will be returned to it.
The cost for legal representation to the Plaintiff was admitted pursuant to the Decree No. 177/1996 Coll.. although the Plaintiff required it pursuant to the Decree No. 484/2000 Coll.. in the amount of CZK 116,739.- including VAT, when totally 8 acts were provided till the arbitration award issue from the side of the Plaintiff, however, only 5 of them are considered to be acts for which the

successful part is entitled to compensation to be paid by the party failing in the dispute, since other acts only regarded proving or stating already alleged facts.

In Prague dated 11 October 2007

*Signature illegible*
JUDr. Pavel Fráňa, Ph.D.
Chairman of the Arbitration Senate

*Signature illegible*

Mgr. Martin Hrodek
Arbitrator

*Signature illegible*

Dr. Vít Horáček
Arbitrator

*Signature illegible*

Ing. Ondřej Novák, CSc.
Deputy Chairman of the Arbitration Senate

*Signature illegible*

JUDr. Marie Moravcová
Deputy Chairman of the Arbitration Senate

CERTIFICATION - VIDIMUS

I certify hereby this complete copy consisting of 16 sheets
is identical verbatim with the presented
document that is original and consists
of 61 sheets.

In Ostrava  dated November 23, 2007
JUDr. Iveta Sladčíková, Notary in Ostrava
Ostrava, Moravská Ostrava, Na Hradbách 18

Round stamp of
JUDr. Iveta Sladčíková, Notary in Ostrava

Markéta Jiříčková
Notary Secretary
Authorized by the Notary
*Signature illegible*

Round stamp of
JUDr. Iveta Sladčíková
Notary in Ostrava

<div style="border:1px solid black;">

## APOSTILLE
(Convention de La Haye du 5 octobre 1961)

**1. Czech Republic**
   This public document

2. has been signed by: Markéta  Jiříčková

3. Acting in the capacity of Notary Secretary

4. Bears the seal/stamp of JUDr. Iveta Sladčíková, Notary in Ostrava

## CERTIFIED

5. At Prague                     6. On November 26, 2007

7. By the Ministry of Justice of the
   Czech Republic

8. No.: 9157/2007

9. Duty stamp/stamp:             10. Signature: Stejskalová

Round stamp of the Ministry of Justice
of the Czech Republic

</div>

**Interpreter´s Clause**

Being a sworn interpreter of the English language, duly appointed by a resolution of the Regional Court of Law in Ostrava dated the 25th day of October, 1994, Ref. No. 3448/94, I do certify the translation corresponds verbatim to the attached document, and it consists of ...........17........ pages.

I performed following corrections in the translation:............ -...........................

This interpreter´s certification is entered in the Registration Book under the Order Number: ~417~

In testimony whereof I have hereto subscribed my name and affixed my seal

In Ostrava this...22nd.... day of October 2007.









Rsp 484/07

Tento rozhodčí nález vydaný Rozhodčím soudem
při Hospodářské komoře České Republiky a Agrární
komoře České republiky, nabyl právní moci dne ..14. 10.
a je soudně vykonatelný.                              2007
V Praze dne 14. 11. 2007
                                        tajemník
                                  JUDr. Marie Moravcová

# Rozhodčí nález

### Rozhodčího soudu při Hospodářské komoře České republiky a Agrární komoře České republiky

| | |
|---|---|
| **ve sporu žalující strany:** | **PETROF, spol. s r.o.**, IČ 620 28 634, Brněnská 371, Hradec Králové, PSČ 500 06, Česká republika |
| **zastoupené:** | Mgr. Pavlem Vidurou, advokátem, sídlem v Ostravě, Na Hradbách 18, PSČ 702 00 |

proti

| | |
|---|---|
| **žalované straně:** | **Geneva International Corporation**, sídlem 29 East Hintz Road, Wheeling, IL 60090, USA |
| **zastoupené:** | Mgr. Ing. Martinem Lukášem, advokátem, sídlem Karlovo nám. 4, Praha 2, PSČ 120 00 |
| **o:** | 134.182,- USD s příslušenstvím |

### u z n a l i

| | |
|---|---|
| JUDr. Pavel Fráňa, Ph.D. | jako předseda rozhodčího senátu |
| Mgr. Martin Hrodek | jako rozhodce |
| Dr. Vít Horáček | jako rozhodce |

po ústním jednání konaném dne 4.9.2007

### t a k t o  p r á v e m :

1. Strana žalovaná Geneva International Corporation, sídlem 29 East Hintz Road, Wheeling, IL 60090, USA, je povinna zaplatit straně žalující částku 134.182,00 USD, a dále 9,25% úrok z prodlení p.a. z částky 134.182,00 USD ode dne 2.3.2007 do zaplacení, to vše do 15 dnů od právní moci rozhodčího nálezu.

2. Strana žalovaná je povinna zaplatit straně žalující část zaplaceného poplatku za rozhodčí řízení ve výši 168.747,- Kč (poplatek bez 50% navýšení), správní náklady rozhodčího soudu ve výši 145.000,-Kč a náklady spojené s překladem žaloby ve výši 6.891,90 Kč, a to do 3 dnů od právní moci rozhodčího nálezu.

3. Strana žalovaná je povinna zaplatit straně žalující náklady právního zastoupení ve výši 116.379,-Kč a dále cestovné, včetně ztráty času, ve výši 7.893,90 Kč, a to do 15 dnů od právní moci rozhodčího nálezu.

4. Straně žalující se vrací část zálohy na zvláštní náklady ve výši 3.108,10 Kč.

5. Tento rozhodčí nález je konečný a závazný, doručením oběma stranám nabývá účinku pravomocného soudního rozhodnutí a je současně vykonatelný (§ 28, odst. 2 zákona č. 216/1994 Sb. o rozhodčím řízení a výkonu rozhodčích nálezů).

**O d ů v o d n ě n í :**

**I.**

### ŽALOBA ZE DNE 28.5.2007

Žalobou doručenou Rozhodčímu soudu při Hospodářské komoře České republiky a Agrární komoře České republiky (dále jako „**RS**") dne 29.5.2007 se strana žalující domáhala vydání rozhodčího nálezu, a to ve zrychleném řízení, dle kterého by strana žalovaná byla povinna uhradit straně žalující částku ve výši 134.182,-USD s 9,25% ročním úrokem z prodlení z částky 134.182,-USD od 2.3.2007 do zaplacení a náklady rozhodčího řízení, to vše do 3 dnů od doručení tohoto rozhodčího nálezu.

Strana žalující svůj žalobní nárok odůvodnila tím, že dne 24.5.2001 byla mezi právním předchůdcem strany žalující - Továrnou na piana, a.s., stranou žalující a stranou žalovanou uzavřena Smlouva o výhradním prodeji (dále jako „**Smlouva**"), jejímž předmětem je úprava práv a povinností smluvních stran v rámci prodeje smluvních výrobků uvedených v čl. II. Smlouvy, přičemž se jedná o pianina a křídla vyráběná dodavatelem mimo jiné pod těmito obchodními značkami: Petrof®, Weinbach®, Rosler®, Scholze® a Fibich® (a všechny ostatní klavíry vyráběné dodavatelem nyní nebo kdykoli po dobu platnosti Smlouvy) na území USA, kdy tento prodej provádí strana žalovaná. Ke Smlouvě byl dne 10.6.2003 uzavřen Dodatek a dne 29.4.2004 byl uzavřen Dodatek č.2. Na základě Smlouvy a zavedené praxe mezi stranami byly stranou žalovanou objednány, stranou žalující dodány, stranou žalovanou převzaty a stranou žalující vyúčtovány smluvní výrobky, kdy toto zboží spolu s cenou je specifikováno v předmětných fakturách a konfirmacích. Doba splatnosti byla sjednána na 90 dnů od data faktury nebo data odeslání zboží z továrny strany žalující. Dodané zboží bylo objednáno a vyúčtováno.

Strana žalující dále vyjádřila názor, že sama strana žalovaná potvrdila oprávněnost nároků strany žalující na zaplacení kupní ceny, když se pokusila provést vůči pohledávkám strany žalující jednostranný zápočet tím, že straně žalující zaslala dne 19.3.2007 jednostranné započtení pohledávek vůči nárokům strany žalující, a to na částku 120.000,-USD. Strana žalovaná zaslala tento zápočet po uplatnění své domnělé pohledávky ve výši 246.323,68 USD, kdy toto uplatnění pohledávky provedla prostřednictvím svého právního zástupce přípisem ze dne 9.3.2007. Takto uplatněná domnělá pohledávka strany žalované byla odmítnuta právním zástupcem strany žalující v přípise ze dne 19.3.2007. Strana žalující pak prostřednictvím svého právního zástupce zápočet pohledávek odmítla přípisem ze dne 22.3.2007, kdy rovněž vyzvala k jednání o sporných záležitostech tak, jak je to vyžadováno Smlouvou dle jejího čl. XVI. Na tuto výzvu reagoval právní zástupce strany žalované faxovou

zprávou ze dne 26.3.2007 a dle následné domluvy se právní zástupci stran sešli k jednání v Praze dne 11.4.2007, kdy však nedošli k žádnému řešení nastalé situace. Strana žalující jednostranný zápočet strany žalované neuznala a neuznává a považuje jej za neplatný, kdy strana žalující v prvé řadě neuznává existenci jakékoliv pohledávky, kterou by strana žalovaná měla vůči straně žalující, a to z jakéhokoliv právního důvodu, a rovněž považuje uvedený pokus o zápočet ze strany žalované za neplatný.

Dále strana žalující uvádí důvody neuznání existence pohledávky tak, jak ji požadovala uhradit strana žalovaná přípisem právního zástupce ze dne 9.3.2007. Jedná se o to, že:

1. Ze strany žalované nebyl dodržen postup řešení reklamací tak, jak je uvedeno ve Smlouvě.

2. Strana žalovaná porušila sjednaný reklamační postup konkrétně v těchto bodech:
   a) neuvědomila stranu žalující o vadách ve sjednané lhůtě maximálně 60 dnů od objevení těchto vad;
   b) nenavrhla straně žalující, jak řešit všechny reklamace týkající se případných vad;
   c) nepředložila straně žalující jakoukoliv dokumentaci k žádné z případných vad;
   d) jelikož strana žalovaná nikdy dříve případné vady nereklamovala u strany žalující, nikdy tyto případné vady pak nemohly být řešeny mezi stranami a strana žalovaná sjednaný reklamační postup porušuje i tím, že nikdy nevyvolala jakékoliv jednání stran ohledně případných vad, kdy v případě přetrvávajících rozporů by tyto vady musely být řešeny cestou samostatného arbitrážního řízení, to vše v souladu s čl. XV. Smlouvy, předposlední větou.

3. Strana žalovaná - odběratel má dle čl. XV. Smlouvy – reklamační postup, povinnost malé vady výrobků odstraňovat v rámci svého servisu a na své náklady. Z přípisu ze dne 9.3.2007 však není patrné, o jaké vady ozvučných desek se jedná, tyto případné vady nejsou specifikovány dostatečně určitě. Není tedy vůbec možno stanovit, zda se jedná o vady závažnější (např. prasklá ozvučná deska), či o vady malé, které má za povinnost odstranit na své náklady strana žalovaná – odběratel. Ve smyslu čl. 39 odst. 1 Úmluvy OSN o smlouvách o mezinárodní koupi zboží (dále jako „CISG“) tak nebyla stranou žalovanou dostatečně specifikována povaha vad, kdy na seznamu případných vad, připojeném k přípisu právního zástupce strany žalované ze dne 9.3.2007 (Petrof Soundboard Failures 2004 through February 2007 – Revised 3/7/07), žádná specifikace vad uvedena není.

4. Jelikož strana žalovaná v rozporu se smluveným reklamačním postupem neuvědomila stranu žalující o vadách ve sjednané lhůtě maximálně 60 dnů od objevení těchto vad, pak ve smyslu čl. 39 odst. 1 CISG byla prekludována práva strany žalované z případných vad zboží.

5. Porušení reklamačního postupu stranou žalovanou je zřejmé rovněž z toho, že případné vady nebyly uplatněny ve smyslu čl. 9 odst. 1 CISG ani v souladu s praxí, která byla mezi stranami zavedena v rámci reklamací.

6. Neoprávněnost požadavku strany žalované na úhradu škody v souvislosti se seznamem případných vad, připojený k přípisu ze dne 9.3.2007, vyplývá i ze

skutečnosti, že v předmětné době probíhaly reklamace strany žalované v souladu se zavedenou praxí stran. Případné vady ze seznamu strany žalované ze dne 9.3.2007 nikdy nebyly straně žalující oznámeny, a to i přes řádná reklamační řízení, v rámci kterých byly řešeny reklamace strany žalované uplatněné v souladu se sjednaným reklamačním postupem a zavedenou praxí stran.

7. Jelikož strana žalovaná sama odstraňovala případné vady, dle svého seznamu ze dne 9.3.2007, a to bez jakéhokoliv uvědomění a součinnosti strany žalující, pak strana žalovaná zbavila stranu žalující možnosti tyto případné vady řešit v souladu se sjednaným reklamačním postupem a zavedenou praxí stran, a rovněž následkem toho zanikla případná práva straně žalované z vad zboží vůči straně žalující.

8. Strana žalovaná dále uplatnila svůj požadavek v rozporu s Dohodou o narovnání uzavřenou mezi stranami dne 29.4.2004. V článku *2. Zpětvzetí žalob a narovnání nároků* odstavci 2.4. Dohody o narovnání bylo dohodnuto, že „Každá ze stran se tímto vzdává všech práv nebo potenciálních nároků, zejména na náhradu škody, které může mít ohledně událostí, které nastaly přede dnem účinnosti této dohody o narovnání." Seznam strany žalované ze dne 9.3.2007 obsahuje 18 případů reklamovaných před datem účinnosti Dohody o narovnání. Některé z nich byly dokonce reklamovány v roce 2002 a 2003.

Z uvedeného strana žalující dovozuje, že pohledávky, které strana žalovaná uplatňuje a uvádí ve svém Jednostranném zápočtu pohledávek ze dne 19.3.2007, nikdy nevznikly, a tudíž nikdy nebyly způsobilé k započtení.

Navíc je, dle jejího názoru, samotný zápočet bez ohledu na neexistenci jakékoliv pohledávky strany žalované rovněž neplatným právním úkonem, a to pro jeho neurčitost ve smyslu §37 odst. 1 zákona č. 40/1964 Sb., občanský zákoník, a to proto, že strana žalovaná ve svém Jednostranném zápočtení pohledávek, článku 2. Pohledávky společnosti PETROF vůči společnosti Geneva, v poslední větě uvádí: „ *Pohledávka byla vyúčtována společnosti Geneva fakturami č. XXX a XXX.* " V rámci započtení vzájemných pohledávek musí být jasné a patrné, která konkrétní pohledávka jedné strany je započítávána proti rovněž konkrétní pohledávce druhé strany. Údaj o výši pohledávky strany žalující vůči straně žalované z obchodního styku, tj. částka 120.000,- USD, je navíc uveden chybně, neboť strana žalující má za stranou žalovanou pohledávku z obchodního styku v celkové výši 134.182,-USD.

Strana žalovaná do současné doby, a to i s ohledem na to, že strana žalující neuznává pokus strany žalované o provedení zápočtu, nezaplatil ničeho na uvedenou kupní cenu v celkové výši 134.182,-USD.

Straně žalující tak měl dále vzniknout nárok na úrok z prodlení počítaný od prvního dne prodlení, tedy od 20.3.2007, a to ve výši určené v souladu s §735 zákona č. 513/1991 Sb., obchodní zákoník. Jelikož s účinností ode dne 29.6.2006, tedy i v první den prodlení, činil U.S. Prime Rate 8,25%, kterou stanovuje The Federal Open Market Committee, pak po navýšení o 1% činí sazba úroku z prodlení 9,25% p.a.

ŽALOBNÍ ODPOVĚĎ ZE DNE 24.7.2007

Strana žalovaná se k žalobě vyjádřila ve své žalobní odpovědi ze dne 24.7.2007 doručené RS dne 25.7.2007. Uvedla, že v této fázi řízení činí nesporným, že:
1. dne 24.5.2001 byla mezi stranou žalující a stranou žalovanou uzavřena Smlouva.
2. Smlouva v čl.XVI. obsahuje rozhodčí doložku zakládající pravomoc a příslušnost RS.

Dále strana žalovaná uvádí, že čl. XVI. Smlouvy obsahuje toto ujednání, které taktéž cituje: *„strany se pokusí v dobré víře vyřešit každý spor plynoucí z této smlouvy nebo týkající se jí ihned vzájemným jednáním. Kterákoli ze stran může druhou stranu upozornit na každý takovýto spor, který není vyřešen v rámci běžných obchodních vztahů mezi stranami. Do přiměřené doby od doručení tohoto upozornění (zpravidla 20 dnů) se strany sejdou ve vzájemně přijatelném čase a na vzájemně přijatelném místě, aby si vyměnily informace a pokusily se spor vyřešit. Pokud spor nebude vyřešen do 60 dnů od upozornění strany žádající o jeho řešení nebo pokud se strany do přiměřené doby nesejdou, může kterákoli ze stran vyvolat arbitrážní řízení podle tohoto článku XVI."* S odkazem na uvedené, strana žalovaná poukazuje na to, že strana žalující, ohledně jím tvrzené pohledávky, nevyvolala (nepokusila se vyvolat) jakékoliv jednání tak, jak Smlouva předpokládá. Tím měla strana žalující porušit citovaný článek Smlouvy, což má za následek, že žaloba je podána předčasně (nejedná se o tzv. actio nata), když strana žalující nesplnila veškeré povinnosti nutné k řádnému projednání žaloby. Strana žalovaná proto navrhla, aby podaná žaloba byla pro předčasnost zamítnuta.

Pro případ, že by se RS neztotožnil s námitkou předčasného podání žaloby, uvedla strana žalovaná následující argumenty:
Strana žalovaná učinila nesporným tvrzení uvedená v čl. II. arbitrážní žaloby s tím, že nesporování dodávky zboží a jejího vyúčtování v žádném případě nemá být vykládáno jako uznání, ať už s účinky procesněprávními nebo dokonce účinky hmotněprávními. Rovněž se ztotožnila s právní kvalifikací strany žalující, a sice že na právní vztah stran dopadá CISG.

Strana žalovaná nadále tvrdí vlastní pohledávku na náhradu škody ve výši 246.323,68 USD. Tuto pohledávku strana žalovaná vyčíslila a dne 9.3.2007 prostřednictvím svého právního zástupce zaslala straně žalující s požadavkem na její úhradu. Tímto okamžikem se pohledávka na náhradu škody v souladu s ust. § 563 občanského zákoníku stala splatnou. Škoda se jmenovitě sestává z:

(i)    nákladů na dopravu vadného piana od zákazníka/dealera do sídla strany žalované,
(ii)   nákladů na provedení opravy vadného piana, přičemž u prasklin rámu většího rozsahu docházelo vždy k výměně celé vadné části piana za náhradní část, kterou strana žalující dodala straně žalované,
(iii)  nákladů na dopravu opraveného piana zpět od strany žalované k zákazníkovi/dealerovi,
(iv)   slevy, kterou byla strana žalovaná nucena poskytnout dealerovi, který opravené piano prodával v kvalitě B, nikoliv v původní (nejvyšší možné) kvalitě A, a to formou dobropisu.

Strana žalovaná uvedenou pohledávku jen tvrdí a listiny prokazující vznik a trvání pohledávky RS následně doručí. Strana žalovaná uvádí, že dne 19.3.2007 provedla do výše 120.000,-USD částečný zápočet své splatné pohledávky proti splatné pohledávce strany žalující uplatněné v tomto řízení.

K námitce strany žalující, že strana žalovaná nepostupovala při notifikaci vad v souladu se Smlouvou, strana žalovaná uvádí, že stejně tak, jak je uvedeno v žalobě, se praxe stran při reklamaci vad od sjednaného postupu ve Smlouvě mírně lišila, když smluvně sjednaný postup by vedl ke zbytečně zdlouhavému vyřizování reklamací, snížení odbytu a ztrátě dobrého jména výrobků strany žalující. Toho se strany hodlaly vyvarovat. Strana žalovaná však dodala, že v každém případě dodržela stranami zavedenou praxi při reklamaci, víceméně popsanou stranou žalující v čl. IV.5 žaloby.

Strana žalovaná uplatnila svou pohledávku na náhradu škody, nezávisle na nárocích vzniklých z odpovědnosti za vady, které existují v souladu s CISG nezávisle na právu požadovat náhradu škody. V souladu s čl. 45 odst.2 CISG *„není kupující zbaven práva, které může mít na uplatnění náhrady škody, uplatní-li kupující právo na jiné náhrady“*. Jelikož strana žalovaná neuplatňuje právo z odpovědnosti za vady, ale za náhradu škody, není pro existenci pohledávky z titulu náhrady škody rozhodný reklamační postup uvedený v čl. XV. Smlouvy. Strana žalovaná tak uplatnila svou pohledávku na náhradu škody plně v souladu s článkem 74 až 77 CISG. Strana žalovaná dále uvádí, že vady, v souvislosti se kterými je uplatňována náhrada za škody, jsou všechny závažného charakteru ve smyslu čl. 15 Smlouvy, a že strana žalující o nich byla vždy informována neformálně – telefonicky, e-mailem či faxem. Způsob informování nebyl ve Smlouvě určen a dohodou stran byla zavedena praxe neformální notifikace vad. Někdy byly vyplněny a odeslány i speciální formuláře s logem strany žalující.

K námitce strany žalující, že zápočet je z důvodu neurčitosti podle ust. § 37 občan. zákoníku, neplatný, strana žalovaná uvádí, že s touto právní kvalifikací se neztotožňuje a poukazuje na ust. § 266 odst. 1 obchod. zákoníku, podle kterého *se projev vůle vykládá podle úmyslu jednající osoby, jestliže tento úmysl byl straně, které je projev vůle určen, znám nebo jí musel být znám*. K tomu strana žalovaná uvedla, že straně žalující byla známa výše škody, kterou strana žalující uplatňuje, v dokumentu byl jednoznačně vyjádřen úmysl započítat co do výše 120.000,-USD a rovněž je nepochybná znalost strany žalující o tom, že v čase zápočtu existovaly čtyři pohledávky z obchodního styku, jejichž celková výše činila 134.182,-USD a na něž strana žalovaná prováděla zápočet.

Strana žalovaná provedla ve svém vyjádření na zbývající pohledávku strany žalující ve výši 14.182,-USD (rozdíl mezi 134.182,-USD a 120.000,-USD) zápočet části své protipohledávky z titulu náhrady škody.
Strana žalovaná dále pro případ, že by se RS ztotožnil s námitkou neurčitosti původního zápočtu, provedla ve svém vyjádření zápočet své vlastní pohledávky na náhradu škody ve výši 246.323,68 USD na pohledávku strany žalující ve výši 134.182,-USD. Zápočet činí jako obranu a strana žalovaná protižalobu nepodala.
Strana žalovaná vyjádřila názor, že jí vznesená kompenzační námitka s odkazem na ust. 28 odst. 3 Řádu RS pro mezinárodní spory nepodléhá poplatkové povinnosti.
Závěrem strana žalovaná navrhla, aby RS vydal rozhodčí nález, kterým se žaloba zamítá.

## DOPLNĚNÍ ŽALOBNÍ ODPOVĚDI ZE DNE 7.8.2007

Strana žalovaná doručila dne 7.8.2007 RS své doplnění žalobní odpovědi, ke kterému přiložila k důkazu listiny, jichž se dovolávala ve své žalobní odpovědi ze dne 24.7.2007. V tomto doplnění konstatuje, že jí v době sepisu repliky nebyly známy všechny náklady na opravy, a že v některých případech byly tyto pouze odhadnuty. Po pečlivém sčítání veškerých nákladů vyšlo najevo, že celková škoda strany žalované z vadných pian uvedených v žalobě

činí 128.733,89 USD. Strana žalovaná, aby předešla případným námitkám strany žalující, uvedla, že při posledním podání započetla svou pohledávku vyplývající z titulu náhrady škody na konkrétně stanovených pianech na žalovanou pohledávku a v tomto podání pouze zpřesňuje výši škody a z důvodu procesní opatrnosti opakuje svou námitku započtení a částku 128.733,89 USD započítává na částku žalovanou.

Strana žalovaná dále založila korespondenci stran dokládající dlouhodobost závad.

### DOPLNĚNÍ ŽALOBNÍ ODPOVĚDI ZE DNE 9.8.2007

Ve svém dalším doplnění doručeném RS 9.8.2007 strana žalovaná uvádí a přikládá důkazy ohledně narovnání stran ze dne 29.4.2004 a ohledně srozumění stran s odchylným reklamačním postupem, než určuje Smlouva, jakož i závazek strany žalující hradit škodu, která straně žalované v důsledku vadných pian vznikla.

### VYJÁDŘENÍ STRANY ŽALUJÍCÍ K ŽALOBNÍ ODPOVĚDI A DOPLNĚNÍ ZE DNE 7.8.2007 A 9.8.2007

Strana žalující se ve svém podání doručeném RS dne 29.8.2007 vyjádřila k obsahu žalobní odpovědi ze dne 24.7.2007, doplnění ze dne 7.8.2007 a doplnění ze dne 9.8.2007.

K námitce předčasnosti žaloby se strana žalující vyjádřila tak, že není důvodná, že se strana žalující řídila postupem dle Smlouvy a právě z důvodu smírného řešení se právní zástupci stran sešli dne 11.4.2007 v Praze, a to v sídle právního zástupce strany žalované. Toto tvrzení i důkazy jsou již obsaženy v žalobě a dodává, že žaloba byla podána více než 60 dnů od výzvy právního zástupce strany žalující. Pro úplnost uvádí, že tvrzení strany žalované je čistě účelové, když ona sama podala dne 19.3.2007 návrh na prohlášení konkurzu na majetek strany žalující, a to z důvodu tvrzené pohledávky strany žalované, který byl zamítnut, a to především z důvodu nedoložení jím tvrzené pohledávky, o kterou opírá i svou obranu v rámci probíhajícího řízení u RS.

Strana žalující se vyjadřuje k provedeným zápočtům a pohledávkám, které v jednotlivých řízeních strana žalovaná uplatňuje. Stejně tak strana žalující upozorňuje na různost seznamů, které při uplatňování pohledávek předkládá. Strana žalující zápočty považuje za neplatné a upozorňuje, že forma obrany jako kompenzace je stranou žalovanou volena záměrně, aby nemusela, v postavení žalobce údajnou škodu a její vznik, prokazovat. Upozorňuje, že když strana žalovaná neznala v době provedení zápočtu konkrétní výši své pohledávky, tak nemohla být určitá a existenční, a tedy způsobilá k započtení.

Strana žalující specifikuje vady, které měly být straně žalované oznámeny před uzavřením Dohody o narovnání dne 29.4.2004, a proto strana žalovaná není oprávněna takovéto nároky uplatňovat.

Strana žalující nesouhlasí s tím, že by se strana žalovaná mohla domáhat náhrady škody dle článku 74 až 77 CISG, a to především proto, že se nejednalo o dodávku vadných výrobků. Tyto si strana žalovaná převzala bez jakékoli výhrady k jejich kvalitě a vady typu „prasklá rezonanční deska nástrojů" jsou vadami záručními a jako takové musely a musí být řešeny. Strana žalovaná svým postupem v podstatě zbavila stranu žalující možnosti, aby jako světoznámý výrobce klavírů a pianin realizovala záruku poskytnutou za dodávané nástroje.

Strana žalující upozorňuje na to, že je povinností strany žalované tvrdit a doložit, jaká konkrétní povinnost byla porušena a jaká je příčinná souvislost mezi takovým případným porušením a údajně vzniklou škodou straně žalované. Strana žalovaná navíc nijak nedokládá, že zboží bylo dodáno vadně.

Strana žalující nesouhlasí s interpretací dopisů Mgr. Zuzany Ceralové – Petrofové ze dne 3.7.2002 a tvrdí, že se jednalo jen o návrh řešení záležitostí týkajících se nástrojů starších 3 let, který však nikdy nebyl stranou žalovanou přijat a nikdy podle něj nebylo postupováno. Tento problém byl vyřešen až na základě řádných reklamací ze strany žalované, a to poskytnutím slevy.

## II.

### PRAVOMOC RS

Pravomoc RS je založena rozhodčí doložkou obsaženou v čl. XVI. Smlouvy - Řídící právo a rozhodčí doložka, která zní „*Každý spor plynoucí z této Smlouvy nebo týkající se jí nevyřešený v rámci běžných obchodních vztahů nebo prostřednictvím mechanismu řešení sporů stanoveného v tomto článku XVI bude řešen prostřednictvím arbitrážního řízení v souladu s Pravidly Rozhodčího soudu při Hospodářské komoře ČR a Agrární komoře ČR*". Strana žalující jmenovala rozhodcem Mgr. Martina Hrodka a strana žalovaná Dr.Víta Horáčka. Tito rozhodci zvolili předsedu rozhodčího senátu JUDr. Pavla Fráňu Ph.D., čímž byl rozhodčí senát řádně zvolen.

## III.

### ÚSTNÍ JEDNÁNÍ

Dne 4.9.2007 se uskutečnilo ústní jednání, kterého se zúčastnili právní zástupci obou stran. V úvodu bylo konstatováno, že jednacím jazykem bude čeština, a to z důvodu, že obě strany veškerá svá podání učinily v jazyce českém a stejně tak i navržené a předložené důkazy.

Na dotaz předsedy senátu jak strana žalující, tak strana žalovaná prohlásily, že nevznáší žádných námitek proti složení rozhodčího senátu.

Strana žalující při ústním jednání uvedla, že plně odkazuje na svá podání ze dne 28.5.2007 a 29.8.2007.

Strana žalovaná potvrdila převzetí výše uvedených podání a z důvodu, že se jí nepodařilo kontaktovat klienta, požádala o poskytnutí lhůty k vyjádření se k poslednímu z podání. Dále odkázala na svá podání ze dne 25.7.2007, 7.8.2007 a 9.8.2007 včetně důkazů. Strana žalovaná pak ještě blíže upřesnila, v čem spočívá jí tvrzený nárok na náhradu škody, a doplňuje, že dokud probíhala obchodní spolupráce založená Smlouvou, nežádala od strany žalující úhradu nákladů spojených s opravou. V zásadě stejná situace již existovala v roce 2004, kdy u RS probíhalo řízení Rsp 75/04, když toto řízení skončilo v dubnu roku 2004 mimosoudním

narovnáním, jeho součástí bylo uzavření Dohody o narovnání, o které se obě strany již zmínily.

Strana žalující uvedla, že se nevzdává své odpovědnosti za vady dodaného zboží a pouze vyžaduje, aby k uplatňování nároků docházelo v souladu s dohodnutým reklamačním postupem. Uplatnění nároku z jiného důvodu je, dle jejího názoru, protiprávním vzhledem např. k § 440 odst. 2, který stanoví, že odpovědnosti z vad musí kupující takto uplatnit a nemůže své nároky uplatnit z jiného právního titulu než zde, např. z odpovědnosti za škody.

Strana žalovaná namítala, že reklamační postup a obchodní praxe zavedená mezi stranami byla odlišná od formálního postupu sjednaného ve Smlouvě. Odkazuje na některé předložené důkazy.

Strana žalující však k tomu namítla, že se jedná o písemnosti týkající se doby před uzavřením Dohody o narovnání.

Strana žalovaná na upřesněnou uvedla, že strana žalující chybně vychází z údajů uvedených v tabulce obsažené v replice strany žalovaného ze dne 7.8.2007, ze sloupce nazvaného „oznámení vady žalovanému", když tento sloupec uvádí pouze datum, kdy byla strana žalovaná informována o výskytu vad a rozhodné datum pro účely reklamace není toto datum, ale datum uvedené ve sloupci označeném jako „rozhodnutí", kde je uvedeno to, kdy strana žalující rozhodla o tom, zda se jedná o reklamovatelnou vadu, či nikoli.

K tomu strana žalující uvádí na zpochybněnou, že v posledním řádku první tabulky je časový odstup mezi oznámením vady žalovanému (8.2.2002) a rozhodnutím o vyřízení reklamace (1.12.2005) více než 3 roky, což je v rozporu s jakoukoli zavedenou praxí.

Při tomto ústním jednání byly provedeny veškeré doposud navržené a předložené důkazy, k čemuž žádná ze stran neměla výhrad a k dotazu předsedy rozhodčího senátu shodně konstatovaly, že nenavrhují při tomto jednání jejich doplnění.

Na to bylo vydáno usnesení, kterým byla straně žalované uložena povinnost ve lhůtě 2 dnů doručit RS a straně žalující důkazy předložené při ústním jednání a stranám poskytnuta lhůta 7 dnů k předložení vyjádření k dosavadnímu průběhu řízení a současně k předložení závěrečných návrhů, včetně vyčíslení uplatňovaných nároků na úhradu nákladů řízení s tím, že po uplynutí uvedených lhůt bude rozhodnuto o dalším procesním postupu.

## IV.

### PODÁNÍ STRAN PO ÚSTNÍM JEDNÁNÍ

Dne 7.9.2007 byl RS doručen přípis strany žalované ze dne 9.8.2007, ke kterému přiložila důkazy v patřičném vyhotovení, které předložila na ústním jednání dne 4.9.2007.

Dne 10.9.2007 požádala strana žalující o prodloužení lhůty k vyjádření a předložení závěrečného návrhu, a to z důvodu, že stranou žalovanou jí byly důkazy v rozporu s usnesení RS doručeny až dne 10.9.2007. RS žádosti vyhověl a svým usnesením ze dne 11.9.2007 prodloužil straně žalující lhůtu k předložení podání do 14.9.2007.

Dne 17.9.2007 bylo RS doručeno vyjádření strany žalující k dosavadnímu průběhu řízení, závěrečný návrh včetně vyčíslení nákladů řízení ze dne 14.9.2007. Strana žalující zkonstatovala, že v dosavadním řízení byl zcela jednoznačně prokázán její žalobou uplatněný nárok na zaplacení částky 134.182,- USD z titulu náhrady kupní ceny a strana žalovaná tento nárok nerozporovala. Dále má strana žalující za to, že strana žalovaná neprokázala jakýkoliv jí tvrzený nárok proti straně žalující a odkazuje na svá dřívější tvrzení. Strana žalovaná naopak nedodržela sjednaný reklamační postup, vady neoznámila v příslušené době a naopak svévolně přistoupila k jejich opravě a v téže době uplatňovala u strany žalující jiné vady standardním postupem. Strana žalovaná nemůže vznášet nároky z titulu odpovědnosti za vady, navíc neprokázala a ani se o to nesnaží porušení konkrétních povinností ze strany žalující a ani příčinnou souvislost ke vzniklé škodě. Strana žalovaná neprokázala sjednání jiného reklamačního postupu než toho, který vyplývá ze Smlouvy. Znovu je namítáno uplatnění nároků ze záležitostí vypořádaných Dohodou o narovnání dne 4.9.2007 a důkazů, které se týkají výměny nástrojů a nikoli jejich opravy. Strana žalující požaduje přiznání celého uplatněného nároku, včetně nákladů řízení spočívající v zaplacení poplatku, paušálu na správní náklady, zálohy na překlady, nákladů právního zastoupení a cestovného, včetně ztráty času. To vše v souhrnné výši 529.420,90 Kč.

Dne 17.9.2007 bylo RS doručeno podání strany žalované datované 11.9.2007, ve kterém shrnuje, ale i doplňuje skutkovou a právní situaci a dále specifikuje závěrečný návrh. Strana žalovaná upozorňuje na to, že směnný kurz koruny české k americkému dolaru se za posledních 6 let výrazně změnil, a že dolar vzhledem ke koruně tak ztratil přibližně polovinu své hodnoty. Z tohoto důvodu byla původní Smlouva pro stranu žalující nevýhodná, když měna, ve které jí bylo plněno, byla USD. Z tohoto důvodu musela strana žalující snižovat náklady na vstupu, což mělo mít vliv na kvalitu výrobků. Strana žalovaná dodává, že po narovnání v roce 2004 byl sjednán (fixován) daleko nižší kurz Kč za USD (25,-Kč za 1 USD), a to má být chápáno jako jednoznačně vstřícné gesto z její strany. Až z důvodů nedosažení dohody o další spolupráci strana žalovaná nechtěla nadále ustupovat, odmítla uhradit pohledávky strany žalující a naopak vznesla své protinároky. Strana žalovaná setrvává na tvrzení, že způsob provádění záručních oprav byl změněn, a to tak, že dopis ze dne 3.7.2002 pí Zuzany Ceralové-Petrofové byl stranou žalovanou přijat konkludentně tak, že se podle ní začal chovat. Strana žalovaná předložila RS další důkazy a navrhla, aby byly provedeny. Mají doložit to, že opravy měla provést nebo zajistit strana žalovaná a neposílat výrobky zpět přes Atlantik.
Strana žalovaná z důvodu procesní obrany započítává ve svém podání další škodu až do výše 134.182,- USD, vzniklé v důsledku dodávky klavírů a pian, u kterých se v záruční době objevily vady. Strana žalovaná navrhuje zamítnutí celého nároku uplatněného stranou žalující, a aby jí byly přiznány náklady právního zastoupení ve výši 280.173,60 Kč.

Dne 18.9.2007 informovala strana žalující RS o tom, že se k poslednímu podání strany žalované, zejména k přiloženým důkazům, ještě vyjádří, a to do 20.9.2007.

Dne 21.9.2007 založila strana žalovaná do spisu další důkaz, a to přísežné prohlášení zaměstnance strany žalované.

Dne 21.9.2007 bylo RS doručeno stanovisko strany žalující k doplnění a shrnutí skutkové a právní situace stranou žalovanou ze dne 11.9.2007 spolu se souhlasem k prodloužení lhůty pro rozhodnutí ve věci. Strana žalující v tomto svém podání uvedla, že především s ohledem na další předkládání listin k důkazu ze strany žalované a na nutnost na tyto patřičně reagovat

souhlasí s prodloužením lhůty k rozhodnutí v urychleném řízení o 10 dnů. Strana žalující upozornila na to, že veškeré listiny doložené stranou žalovanou jsou k věci naprosto irelevantní a jejich předložení v rámci závěrečného návrhu mají pouze účelově oddálit rozhodnutí ve věci. Dokresluje to i na tom, že tyto měla strana žalovaná k dispozici již dříve, ale nepředložila je. Strana žalující opět zdůrazňuje, že vada nástroje spočívající v prasklé rezonanční desce nemohla existovat již v době dodání zboží a tyto vady byly straně žalované jejími zákazníky oznámeny dle jí předložených tabulek po velmi dlouhé době, někdy až po několika letech od dodání výrobků straně žalované. K ukončení obchodního vztahu strana žalující dodává, že důvodem bylo výhradně dlouhodobé závažné porušování povinností ze strany žalované. K telefaxům předloženým stranou žalovanou uvádí, že ty byly učiněny ještě v době, kdy nebyla uzavřena Smlouva a uváděná školení pracovníků se uskutečnila zásadně za účelem provádění poprodejního servisu v rámci oprav malých vad. Co se týče návrhu strany žalované ze dne 22.4.2004, zde strana žalující upozorňuje na bod 9, dle kterého měly být všechny nároky do 5.5.2004 urovnány, a dále na bod 10, dle kterého vyřízení každého nového nároku a záruky mělo být provedeno v souladu se Smlouvou. Strana žalující upozorňuje na logický rozpor v tom, že tvrzené nároky strana žalovaná z důvodu dobrých vztahů neuplatňovala, ale ve stejném období uplatňovala jiné vady, kde probíhalo standardní reklamační řízení. Strana žalující znovu opakuje důsledek nerespektování reklamačního řízení, kterým je prekluze práv ze záručních vad ve smyslu čl. 39 odst. 1 CISG. Strana žalující nesouhlasí s tím, že by nebylo možné aplikovat i ustanovení § 440 odst. 2 obchod. zákoníku. Závěrem uvádí, že další předkládané důkazy stranou žalovanou se stále vzdalují meritu věci.

Dne 25.9.2007 vydal rozhodčí senát usnesení, kterým:
1. Dokazování prohlásil za skončené.
2. Projednávání sporu prohlásil za skončené.
3. Rozhodl o vydání rozhodčího nálezu v písemné formě a z důvodu procesní ekonomie o jeho doručení stranám bez ústního jednání.

Dne 2.10.2007 strana žalující sepsala vyjádření k přeložení přísežného prohlášení pana Johna O. Elliota, ve kterém uvádí, že odmítá považovat toto za důkaz ve věci a navrhuje RS, aby v rámci svého rozhodování k němu vůbec nepřihlížel. Namítá, že je sepsáno v anglickém jazyce, ve formě tzv. affidavitu, a že se jedná o zaměstnance strany žalované. Navíc není jasné, co má listina prokazovat a strana žalovaná k ní nečinní jakékoliv tvrzení. Co se týče obsahu listiny, pak z ní vůbec nevyplývá, že by snad strana žalovaná řádně reklamovala u strany žalující záruční vady a toto nelze dovozovat ani z údajných diskuzí s některými zaměstnanci strany žalující.

Dne 2.10.2007 byla RS doručena odpověď strany žalované na podání strany žalující ze dne 20.9.2007, která je ze dne 1.10.2007. Strana žalovaná zde opět vysvětluje vztah mezi CISG a obchodním zákoníkem, kde uzavírá, že úprava kupní smlouvy v CISG je úpravou komplexní a jakákoliv subsidiarita obchodního zákoníku není na místě. Upozorňuje i na čl. 9 CISG, kde je řešena závaznost zvyklostí. Strana žalovaná pak znovu vysvětluje, jaká byla, dle jejího názoru, zavedena praxe při reklamací výrobků se záruční vadou. K důkazu předkládá další dokumenty, které by měly potvrzovat, že stranami zavedený reklamační postup se lišil od postupu popsaného ve Smlouvě, a to z důvodu vyvarování se zdlouhavému vyřizování reklamací. Pro ilustraci popisuje případ vyřizování reklamace v souladu se Smlouvou zahájené dne 6.8.2007. Z tohoto popisu dovozuje, že strana žalující není ochotna vyřizovat reklamace do doby naplnění kontejneru k přepravě, a že nutí stranu žalovanou skladovat vadná piana. Znovu opakuje, že strana žalovaná byla nucena opravovat vady v zámoří, jinak

by to vedlo k ohromnému nárůstu nákladů a ztrátě dobrého jména strany žalující a jejich výrobků v USA a také k negativním následkům pro stranu žalovanou.

## V.

Rozhodci na základě předložených písemných dokladů, podání a přednesů stran na ústním jednání, dospěli k těmto zjištěním a následujícímu právnímu závěru:

### PŘEDČASNOST ŽALOBY

Nejdříve se rozhodci zabývali námitkou, kterou vznesla strana žalovaná, že žaloba byla podána předčasně, když strana žalující nesplnila veškeré povinnosti nutné k projednání žaloby, a to jmenovitě, že strana žalující nevyvolala (nepokusila se vyvolat) jakékoli jednání se stranou žalovanou, tak jak Smlouva předpokládá. Čl. XVI Smlouvy, kde je uvedena rozhodčí doložka, která obsahuje ujednání *„strany se pokusí v dobré víře vyřešit každý spor plynoucí z této Smlouvy, nebo týkající se jí ihned vzájemným jednáním. Kterákoli ze stran může druhou stranu upozornit na každý takovýto spor, který není vyřešen v rámci běžných obchodních vztahů mezi stranami. Do přiměřené doby od doručení tohoto upozornění (zpravidla 20 dnů) se strany sejdou ve vzájemně přijatelném čase a na vzájemně přijatelném místě, aby si vyměnily informace a pokusily se spor vyřešit. Pokud spor nebude vyřešen do 60 dnů od upozornění strany žalující o jeho řešení, nebo pokud se strany do přiměřené doby nesejdou, může kterákoli ze stran vyvolat arbitrážní řízení podle tohoto čl. XVI."* Strana žalující ve své žalobě popsala, jak a proč vyzvala stranu žalovanou k jednání o sporných záležitostech stran řízení tak, jak je to vyžadováno Smlouvou, což doložila jak výzvou, tak reakcí strany žalované. Současně uvedla, že se i uskutečnilo jednání právních zástupců stran, a to dne 11.4.2007 v Praze. Strana žalovaná uskutečnění schůzky nerozporovala. Rozhodci dospěli k závěru, že žaloba nebyla podána předčasně, a proto bylo na místě ji projednat. Je třeba říci, že dle názoru rozhodců takto sjednané podmínky nebrání k projednání žaloby a jejich hypotetické nedodržení nezpůsobuje předčasnost žaloby. Pro úplnost je třeba uvést, že rozhodci mají za to, že ujednání čl. XVI, které stanovovalo způsob jednání před zahájením soudního sporu, bylo ze strany žalující dodrženo.

### DŮKAZY PŘEDLOŽENÉ PO ÚSTNÍM JEDNÁNÍ

Po ústním jednání, které se uskutečnilo dne 4.9.2007, byly RS spornými stranami doručeny další důkazy.

Strana žalující předložila:

kopie prvního oznámení ze dne 6.1.2004 dle čl. 16 Smlouvy o výhradním prodeji
kopie druhého oznámení ze dne 29.1.2004 dle čl. 16 Smlouvy o výhradním prodeji
kopie přípisu žalovaného ze dne 22.4.2004, včetně reakce žalobce
kopie překladu přípisu žalovaného ze dne 22.4.2004

Strana žalovaná:

historie směnného kurzu USD-CZK
Dohoda o pevném kurzu USD-CZK z 28.2.2006

Businnes plan žalobce na rok 2005
tabulka zpracovaná žalovaným s uvedením obvyklé časové náročnosti opravy
telefax pana Karla Hofmana prodejního manažera žalobce ze dne 1.2.2001
telefax Ing. Jana Petrofa ze dne 27.3.2007
závěry z jednání mezi stranami ze dne 10.6.2001
telefax pí Martiny Barešové ze dne 17.12.2001
e-mail pí Barešové p. Heatonovi ze dne 26.3.2004
oznámení o podání dvou návrhů na zřízení soudcovského zástavního práva k nemovitostem žalobce
tabulka s vyčíslením škody pián 587765, 583883, 586260, 590013
dokumenty k jednotlivým piánům číslo 587765, 583883, 586260, 590013 prokazující výši škody
affidavitu pana p. Johna O. Elliota

V souladu s § 31 Řádu RS došli rozhodci k závěru, že důkazy předložené stranami po jednání provedou již bez nařizování dalšího jednání, a to z důvodu, že se jedná výhradně o listinné důkazy, které měli k dispozici všichni účastníci řízení a také se k nim mohli vyjádřit a ve většině případů také vyjádřili. Dne 25.9.2007 rozhodčí senát svým usnesením prohlásil dokazování za skončené.

Strana žalovaná ke svému podání doručeného RS 2.10.2007 ze dne 1.10.2007 předložila další důkazy, stejně tak učinila strana žalující u svého podání ze dne 5.10.2007, které se rozhodčí senát rozhodl neprovést, a to v návaznosti na zmíněné usnesení ze dne 25.9.2007. Argumentací obsaženou v samotném podání se však rozhodčí senát zabýval.

POHLEDÁVKA STRANY ŽALUJÍCÍ

Strana žalující svou žalobou uplatnila nárok na zaplacení pohledávky ve výši 134.182,-USD s 9,25% ročním úrokem z prodlení z částky 134.182,-USD od 2.3.2007 do zaplacení. Rozhodci dospěli k závěru, že tato pohledávka skutečně vznikla, přičemž strana žalovaná ani důvod jejího vzniku ani její výši nerozporovala. Navíc strana žalovaná svým úkonem, kterým se pokusila jednostranně započíst své pohledávky vůči nárokům strany žalující, zaslaným dne 19.3.2007 právě straně žalující, fakticky i uznala existenci pohledávky strany žalující v době učinění úkonu směřujícímu k jednostrannému započtení vzájemných pohledávek. Z tohoto důvodu se, dle názoru rozhodců, celé řízení zúžilo na problém obrany strany žalované, která argumentovala zánikem skoro celé žalované pohledávky, a to právě z důvodu provedeného zápočtu a navíc i během řízení učinila úkony, které měly směřovat k započtení a tudíž k zániku stranou žalující uplatněné pohledávky.
Rozhodci vzali za prokázané, že strana žalovaná byla od 2.3.2007 v prodlení s úhradou této částky, a že úrok z prodlení, který strana žalující byla oprávněna požadovat. činil 9,25% p.a. z dlužné částky.

POHLEDÁVKA STRANY ŽALOVANÉ

Rozhodci se zabývali tím, zda straně žalované vznikla pohledávka vůči straně žalující v souvislosti s plněním Smlouvy a v jaké výši. Sama strana žalující ve své žalobě připustila, že strana žalovaná vůči ní tvrdí vlastní pohledávku na náhradu škody ve výši 246.323,68 USD, kterou strana žalovaná vyčíslila a dne 9.3.2007 zaslala straně žalující.

13

Strana žalovaná ve svém vyjádření k žalobě skutečně tvrdila svou vlastní pohledávku na náhradu škody ve výši 246.323,68 USD s tím, že dále uvedla, že dne 19.3.2007 provedla do výše 120.000,-USD částečný zápočet své splatné pohledávky vůči splatné pohledávce strany žalující. Současně strana žalovaná učinila úkon směřující k započtení další části své pohledávky proti pohledávce strany žalující, a to ve výši 14.182,-UDS, čímž by v podstatě mělo dojít k započtení celé jistiny uplatněné v tomto řízení ze strany žalující. V tomto stejném podání strana žalovaná pro případ, že by se RS ztotožnil s námitkou neurčitosti původního zápočtu, provedla další zápočet, a to ve výši 134.182,-USD, a to jako obranu. Zde rozhodci poznamenávají, že neurčitost byla tvrzena jen u zápočtu 120.000,-USD a před uplatněním tohoto nového zápočtu 134.182,-USD již strana žalovaná učinila další zápočet, a to ve výši 14.182,-USD, takže celkem strana žalovaná již započítala částku celkem 148.364,-USD.

Strana žalovaná ve svém podání ze dne 7.8.2007 uvedla, že po pečlivém sčítání veškerých nákladů vyšlo najevo, že celková škoda strany žalované z vadných pian uvedených v žalobě činí 128.733,89 USD. Z tohoto důvodu má být brána tato informace jako zpřesnění výše škody, a z důvodu procesní opatrnosti, strana žalovaná zopakovala svou námitku započtení a částku 128.733,89 USD započetla na částku žalovanou.

Rozhodci dospěli k závěru, že strana žalovaná upřesněním výše škody ve svém podání ze dne 7.8.2007 fakticky uznala, že veškerá započtení, která byla předtím učiněna, byla naplněna minimálně z důvodu jejich neurčitostí, když strana žalovaná započítávala a specifikovala pohledávku k započtení, kterou následně sama popřela a vyčíslila jinak. Zůstala zde tedy pouze jediná pohledávka uplatněná jako obrana, a to ve výši 128.733,89 USD, která byla uplatněna včetně námitky započtení dne 7.8.2007. Další uplatnění škody a současně zápočet, až do výše 134.182,-USD provedla strana žalovaná podání ze dne 19.7.2007.

K tomu, aby bylo možné posoudit, zda existovala pohledávka ve výši 134.182,-USD, se rozhodci museli nejdříve zabývat námitkou strany žalující, která pro případ, že by zde existovaly vady zboží, namítala prekluzi práva strany žalované z těchto případných vad s odkazem na čl. 39 odst. 1 CISG a dále tím, zda byl ze strany žalované dodržen reklamační postup sjednaný v čl. 15 Smlouvy, popř. jiný reklamační postup sjednaný mezi stranami nahrazující ten, který byl sjednán ve Smlouvě.

Dle názoru strany žalující měl být striktně dodržován reklamační postup uvedený ve Smlouvě. Strana žalující dále vysvětlovala, čeho se týkala případná ujednání mezi stranami, kdyby byl zvolen postup trochu odlišný. Naopak strana žalovaná argumentovala, že reklamační postup sjednaný ve Smlouvě nebyl v podstatě stranami dodržován a reklamace se prováděly zcela jinak, neformálně, a to zejména z důvodu eliminace značných průtahů s odstraňováním reklamovaných vad, šetření nákladů a zachování pověsti jak strany žalující, tak strany žalované na americkém trhu. Strana žalovaná námitku prekluze odmítala s tím, že se má naopak uplatňovat čl. 45 odst. 2 CISG, ve kterém není kupující zbaven práva, které může mít na uplatnění náhrady škody, uplatní-li kupující právo na jiné náhrady. Strana žalovaná dále argumentovala, že uplatněný nárok není z odpovědnosti za vady, ale z titulu náhrady škody, a proto pro existenci této pohledávky není rozhodný reklamační postup uvedený v čl. 15 Smlouvy.

Rozhodci dospěli k závěru, že mezi stranami byl v čl. 15 Smlouvy sjednán reklamační postup, který následně nebyl změněn, na což nemá vliv to, že v některých dílčích případech bylo mezi stranami třeba postupováno trochu odlišně. Pro uplatňování jakéhokoliv nároku ze strany žalované je proto rozhodující, zda byl dodržen reklamační postup sjednaný mezi stranami či

nikoli. Strana žalovaná v těch případech, které uplatnila u soudu jako obranu, reklamační postup sjednaný ve Smlouvě nedodržela, což v podstatě sama uznala svou argumentací, kdy se snažila vysvětlit, proč strany v těchto konkrétních případech postupovaly odlišně od toho, co bylo sjednáno ve Smlouvě. Vady, které se následně objevily, byly skutečně vady skryté a po jejich objevení, respektive od chvíle co se o nich dozvěděla strana žalovaná, měla tyto uplatnit formou reklamace. Pokud tak neučinila, je zde na místě aplikovat čl. 39 CISG, který stanoví, že právo kupujícího z vad zboží zaniká, jestliže kupující neoznámí prodávajícímu povahu těchto vad v přiměřené době, kdy je zjistil, nebo je měl zjistit. Přiměřenost doby nebylo potřeba zkoumat, jelikož ta byla mezi stranami sjednána na dobu 60 dnů, a navíc stranou žalovanou byly fakticky uplatněny daleko později. Postup podle čl. 45 CISG zde není na místě, a to proto, že není splněn základní předpoklad, kterým je porušení povinnosti prodávajícího ze Smlouvy o koupi. Strana žalovaná, ačkoli odkázala na tento článek, neupřesnila, jakou konkrétní povinnost strana žalující porušila, a dle názoru rozhodčího senátu, ani ve vztahu k neoznámeným vadám nemohla porušit, když o namítaných vadách ani nevěděla. V návaznosti na shora uvedené závěry má rozhodčí senát za to, že straně žalované nevznikla pohledávka ve výši 134.182,-USD vůči straně žalující, nemohla tedy provést platný zápočet, a nedošlo tudíž k zániku pohledávky uplatněné stranou žalující v tomto řízení. V návaznosti na tyto závěry se rozhodci nebudou vypořádávat s jednotlivými důkazy prokazujícími škodu a její výši. Pro úplnost je však třeba poznamenat, že většina vad, uplatněných stranou žalovanou, pochází z doby před uzavřením Dohody o narovnání, a z toho důvodu došlo k jejich vypořádání a k zániku.

## Použití CISG

Rozhodci dospěli k závěru, že použití CISG je v daném případě na místě. Jedná se o smluvní vztah, na který se vztahuje úprava CISG a její použití ztvrdily obě strany ve svých podáních.

Rozhodci se nezabývali důvody, pro které byla spolupráce ukončena, jelikož to není podstatné pro rozhodnutí ve věci. Stejně tak se rozhodci nezabývali důvody, které vedly k dřívějším sporům, které skončily Dohodou o narovnání ze dne 4.9.2007.

## Lhůta pro vydání rozhodčího nálezu

Strana žalující svým podáním ze dne 5.10.2007, které bylo RS doručeno dne 8.10.2007, prodloužila lhůtu k rozhodnutí v urychleném řízení o 7 dnů ode dne podání, tedy do 12.10.2007.

## Rozhodnutí o nákladech

Žalobce měl plný úspěch ve věci a jelikož se o nákladech řízení rozhoduje podle zásady úspěchu strany ve věci a podle § 8 až 12 Pravidel o nákladech rozhodčího řízení, která jsou součástí Řádu RS, náleží žalovanému náhrada nákladů právního zastoupení, část poplatku za rozhodčí řízení ve výši, která odpovídá běžnému řízení, nikoli ve zrychlené formě (tuto část ve výši 84.373,-Kč si musí nést strana žalující ze svého), správní náklady rozhodčího soudu a náklady spojené s překladem žaloby, když nevyužité náklady mu budou vráceny.
Náklady právního zastoupení straně žalující byly přiznány podle vyhlášky číslo 177/1996 Sb., ačkoli je žalobce požadoval dle vyhlášky č. 484/2000 Sb., a to ve výši 116.739,-Kč včetně DPH, když do vydání rozhodčího nálezu bylo ze strany žalující učiněno celkem 8 úkonů, z nichž však pouze 5 úkonů je považováno za úkony, za nichž náleží úspěšné straně nárok

na jejich úhradu ze strany, která ve sporu  podlehla, neboť ostatní úkony se týkaly pouze dokazování, nebo konstatování již tvrzených skutečností.

V Praze dne 11.10.2007

JUDr. Pavel Fráňa, Ph.D.
předseda rozhodčího senátu

Mgr. Martin Hrodek
rozhodce

Dr. Vít Horáček
rozhodce

Ing. Ondřej Novák, Csc.
místopředseda RS

JUDr. Marie Moravcová
tajemnice RS

*Ověření - vidimace* 16

Ověřuji, že tento opis složený z ............. listů
doslovně souhlasí s listinou, z níž byl pořízen,
složenou z ....16... listů.

V Ostravě dne .............. **23 -11- 2007**
JUDr. Iveta Sladčíková, notářka v Ostravě
Ostrava, Moravská Ostrava, Na Hradbách 18



Markéta **JIŘÍČKOVÁ**
notářská tajemnice
pověřená notářkou

---

# APOSTILLE
(Convention de La Haye du 5 octobre 1961)

1. **Česká republika**
   **Czech Republic**

   Tato veřejná listina
   This public document

2. byla podepsána ........................................................................................
   has been signed     Markétou Jiříčkovou

3. jehož funkce ........ ........................................................................................
   acting in the capacity of    notářská tajemnice

4. opatřena razítkem ........................................................................................
   bears the seal/stamp of  JUDrIveta Sladčíková, notářka v Ostravě

   ........................................................................................

## OVĚŘENO
## CERTIFIED

5. v Praze

   6. dne 26.11.2007
   at  Prague              date

7. **Ministerstvo spravedlnosti ČR**
   **Ministry of Justice of the Czech Republic**

8. čís 9157/2007
   N°

9. kolek/razítko:          
   duty stamp/stamp:              10. Podpis: Stejskalová
                                      Signature



# EXHIBIT 3

Mgr. Pavel Vidura, advokát
Na Hradbách 18, 702 00 Ostrava
IČ: 7000 522, ev. č. ČAK 10128
tel.: 596 118 547, tel./fax: 596 115 707
–2–

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GENEVA INTERNATIONAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 07 CV 4214 |
| | ) | |
| PETROF, SPOL. S R.O., | ) | Judge James B. Moran |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF PAVEL VIDURA

Under penalties as provided by law pursuant to Title 28, Section 1746 of the United States Code, I, Pavel Vidura, certify that the following statements set forth in this Declaration are true and correct:

1.    I am an attorney licensed to practice law in the Czech Republic.  I have been a practicing attorney since 2003 in my own law firm Mgr. Pavel Vidura, advokát, located in the city of Ostrava, at Na Hradbách street No. 18, Czech Republic.

2.    I have represented PETROF, SPOL. S R.O. ("Petrof") for approx. 7 years.

3.    On October 12, 2007, Petrof obtained an arbitration award in the Czech Republic that obliges Geneva International Corporation ("GIC") to pay Petrof $134,182.00 United States Dollars, together with interest, costs and the attorney fees.  To date, GIC has not satisfied the main portion of the subject arbitration award. GIC has paid only fee for the arbitration proceedings in the amount of CZK 168.747,- , administrative expenses of the Arbitration Court  in the amount of CZK 145.000,- , and cost related to translation of the suit in the amount of CZK 6.891,90, in total CZK 320.638,90. The mentioned payment realized on or about October 23, 2007, is evident from the statement

of bank account made by the "Živnostenská banka, a.s." for the account of Petrof with

account number IBAN CZ57 0400 0000 0004 7951 1004.


November 27, 2007


Pavel Vidura

# Výpis z účtu

**Živnostenská Banka**
UniCredit Group

ob. Praha Corporate
říkopě 20, Praha 1

| Číslo účtu | 479511004 | Měna | CZK |

Číslo účtu IBAN    CZ57 0400 0000 0004 7951 1004

Číslo výpisu / rok                    57 / 2007

Strana          1 / 1
ID 2196084

800

**PETROF, SPOL. S R.O.**
BRNĚNSKÁ 371
500 06 HRADEC KRÁLOVÉ 6

Překontrolujte si prosím údaje uvedené na tomto výpise.
V případě nejasností se obraťte na Vaši pobočku.

| Frekvence výpisu | denní | Počáteční zůstatek | 16.501,74 |
| Výpis ze dne | 24.10.2007 | Příjmy | 320.638,90 |
| Období výpisu | 23.10.2007 - 23.10.2007 | Výdaje | 0,00 |
| p účtu | Běžný | **Konečný zůstatek** | **337.140,64** |

| | | Počáteční zůstatek | | | 16.501,74 |
|---|---|---|---|---|---|
| **Datum** | **Valuta** | **Transakce** | | **Příjmy** | **Výdaje** |
| 23.10.2007 | | TUZEMSKÁ PLATBA PŘÍCHOZÍ - EXPRES | | 320.638,90 | |
| | | Uhrazeno od: 5400 | | | |
| | | Číslo účtu: 103800 | | | |
| | | Plátce: GE9970/GENEVA INTERN | | | |
| | | Popis1: ARBITRARY 2 | | | |
| | | Popis2: ORGBYO GENEVA INTERNATIONAL CORPORA | | | |
| | | KS 2088 | | | |
| **23.10.2007** | | **Konečný zůstatek** | | | **337.140,64** |



**Mgr. Pavel** Vidura**, advokát**
Na Hradbách 18, 702 00 Ostrava
IČ: 70301522, ev. č. ČAK 10128
tel.: 596 118 547, tel./fax: 596 115 707
– 2 –